**Melanie A. KEYES, Petitioner,**

v.

**HUMANA HOSPITAL ALASKA, INC., a Delaware Corporation; Sisters of Providence in Washington, a Washington Corporation; Terry Clifford; Dr. Scott Sims, D.O.; Dr. Frank Hollingshead, M.D.; Dr. Kenneth Bing, M.D.; Dr. John Hall, M.D.; Dr. Sigma Alpha, M.D., Respondents.**

**No. S–1848.**

Supreme Court of Alaska.

Feb. 19, 1988.

---

William J. Donohue, Kennelly, Azar & Donohue, P.C., Anchorage, for petitioner.

Sanford M. Gibbs and Meredith A. Ahearn, Hagans, Brown, Gibbs & Moran, Anchorage, for respondents Humana Hosp. Alaska, Inc., Sisters of Providence in Washington, Scott Sims, D.O., Frank Hollingshead, M.D., Kenneth Bing, M.D., and John Hall, M.D.

Jill E. Mickelsen, and George N. Hayes, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for respondent Sigma Alpha, M.D.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Chief Justice.

Petitioner Melanie Keyes challenges the constitutionality of AS 09.55.536, which provides for mandatory pre-trial review of medical malpractice claims by an expert advisory panel and makes the panel's written report admissible in evidence at trial. She specifically argues that the statute deprives her of due process of law, impairs her right to a jury trial, and violates separation of powers principles by impermissibly delegating judicial power to members of the panel.

We hold that AS 09.55.536 survives constitutional muster and therefore affirm the superior court's denial of Keyes' motion for a protective order.

BACKGROUND.

Petitioner Melanie Keyes filed suit in superior court for personal injuries arising from an automobile accident against the driver of the vehicle in which she was a passenger and against the hospitals and physicians involved in treating her injuries. Her complaint alleged, *inter alia*, negligent diagnosis and treatment by each of the defendant physicians. Most of the acts complained of were allegedly committed in the emergency rooms of the hospital defendants, by physicians who were employees or agents of the hospitals.

On September 17, 1986, Keyes filed a motion for a protective order requesting the superior court not to present her case to an expert advisory panel as required by

AS 09.55.536,[1] based on alleged constitutional defects of the statute. The medical defendants opposed. The superior court denied the motion and thereafter appointed three physicians to serve as the expert advisory panel in Keyes' case. Subsequently Keyes filed the instant petition.

DISCUSSION.

A. *Right to Jury Trial.*

Keyes claims that AS 09.55.536 substantially impairs her right to a jury trial as guaranteed by article I, section 16 of the Alaska Constitution.[2] She appears to argue that introduction of the medical expert panel's report into evidence at trial will undercut the jury's role as the trier of fact, based on her belief that the jury will give undue deference to the panel's opinion.

Similar charges have been leveled in nearly all of the cases which have addressed the constitutionality of statutes providing for some form of non-binding review of medical malpractice claims prior to trial. The vast majority have rejected the charge on the ground that the jury remains the ultimate arbiter of factual questions and upon the belief that the jury weighs the panel's opinion in the same manner as it weighs all of the other evidence presented.[3] *See, e.g., Woods v. Holy Cross Hosp.*, 591 F.2d 1164, 1179 (5th Cir. 1979), *rationale adopted in McCarthy v. Mensch*, 412 So.2d 343, 345 (Fla.), *cert. denied*, 459 U.S. 833, 103 S.Ct. 73, 74 L.Ed. 2d 72 (1982) (statute held unconstitutional on other grounds in *Aldana v. Holub*, 381 So.2d 231 (Fla.1980)); *Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744, 748–49 (1977); *Johnson v. St. Vincent Hosp.*, 273 Ind. 374, 404 N.E.2d 585, 593 (1980); *Prendergast v. Nelson*, 199 Neb. 97, 256 N.W.2d 657, 665, 666 (1977); *Comiskey v. Arlen*, 55 A.D.2d 304, 390 N.Y.S.2d 122, 126 (1976), *aff'd*, 43 N.Y.2d 696, 401 N.Y.S.2d 200, 372 N.E.2d 34 (1977); *Beatty v. Akron City Hosp.*, 67 Ohio St.2d 483, 424 N.E.2d 586, 589, 590 (1981); *State ex rel. Strykowski v. Wilkie*, 81 Wis.2d 491, 261 N.W.2d 434, 452

1. AS 09.55.536 provides in relevant part:

 (a) In an action for damages due to personal injury or death based upon the provision of professional services by a health care provider when the parties have not agreed to arbitration of the claim under AS 09.55.535, the court shall appoint within 20 days after filing of answer to a summons and complaint a three-person expert advisory panel unless the court decides that an expert advisory opinion is not necessary for a decision in the case....

 (b) The expert advisory panel may compel the attendance of witnesses, interview the parties, physically examine the injured person if alive, consult with the specialists or learned works they consider appropriate, and compel the production of and examine all relevant hospital, medical, or other records or materials relating to the health care in issue. The panel may meet in camera, but shall maintain a record of any testimony or oral statements of witnesses, and shall keep copies of all written statements it receives.

 (c) Not more than 30 days after selection of the panel, it shall make a written report to the parties and to the court....

 ....

 (e) The report of the panel with any dissenting or concurring opinion is admissible in evidence to the same extent as though its contents were orally testified to by the person or persons preparing it. The court shall delete any portion that would not be admissible because of lack of foundation for opinion testimony, or otherwise. Either party may submit testimony to support or refute the report. The jury shall be instructed in general terms that the report shall be considered and evaluated in the same manner as any other expert testimony. Any member of the panel may be called by any party and may be cross-examined as to the contents of the report or of that member's dissenting or concurring opinion.

2. Alaska Const. art. I, § 16 provides in relevant part, "In civil cases where the amount in controversy exceeds two hundred fifty dollars, the right of trial by a jury of twelve is preserved to the same extent as it existed at common law."

 In her brief, Keyes argues that the right to trial by jury is a fundamental right which cannot be impaired without due process of law; she does not assert an independent constitutional violation based solely on article I, section 16. For purposes of clarity, we will discuss Keyes' other alleged due process violations separately.

3. The legal commentators generally agree that admissibility of a panel award does not impinge upon the right to jury trial. *See* Redish, *Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications*, 55 Tex. L.Rev. 759, 793 (1977); Note, *The Constitutional Considerations of Medical Malpractice Screening Panels*, 27 Am.U.L.Rev. 161, 181–82 (1977); Note, *Medical Malpractice Mediation Panels: A Constitutional Analysis*, 46 Fordham L.Rev. 322, 333–34 (1977) [hereinafter "Fordham Note"].

(1978).[4] We join these jurisdictions in rejecting Keyes' jury trial attack on AS 09.-55.536 on this ground, and note in particular our agreement with the view expressed by the court in *Comiskey:* "The panel's recommendation is, in effect, an expert opinion which is to be evaluated by the jury in the same manner as it would evaluate any other expert opinion, as directed by the instructions of the trial justice." 390 N.Y. S.2d at 126; *see also Treyball v. Clark,* 65 N.Y.2d 589, 493 N.Y.S.2d 1004, 483 N.E.2d 1136 (1985).

The result we reach on this point also garners support from *In Re Peterson,* 253 U.S. 300, 304, 40 S.Ct. 543, 544, 64 L.Ed. 919, 921 (1920), in which the Supreme Court sustained against a seventh amendment challenge a trial court order appointing an auditor to make a preliminary investigation of the facts, hear the witnesses, examine the accounts of the parties, and make and file a report in the office of the court clerk, with a view to simplifying the issues for the jury. The auditor was further ordered to express his opinion on several disputed issues of fact. The Court disposed of the claim that this procedure deprived a party of a trial by jury, stating:

> The command of the 7th Amendment ... does not require that old forms of practice and procedure be retained. It does not prohibit the introduction of new methods for determining what facts are actually in issue, nor does it prohibit the introduction of new rules of evidence. Changes in these may be made. New devices may be used to adapt the ancient institution to present needs and to make of it an efficient instrument in the administration of justice. Indeed, such changes are essential to the preservation of the right. The limitation imposed by the Amendment is merely that enjoyment of the right of trial by jury be not obstructed, and that the ultimate determination of issues of fact by the jury be not interfered with.
>
> ....
>
> Nor can the order be held unconstitutional as unduly interfering with the jury's determination of issues of fact, because it directs the auditor to form and express an opinion upon facts and items in dispute. The report will, unless rejected by the court, be admitted at the jury trial as evidence of facts and findings embodied therein; but it will be treated, at most, as prima facie evidence thereof. The parties will remain as free to call, examine, and cross-examine witnesses as if the report had not been made. No incident of the jury trial is modified or taken away either by the preliminary, tentative hearing before the auditor, or by the use to which his report may be put.

---

4. Each of these cases involved a state statute authorizing the admissibility of the panel recommendation or opinion but leaving the jury free to determine the weight of that opinion. *Cf. Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, 68–70, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978) (upholding statute providing for both admissibility and presumption of correctness of panel's award against alleged infringement of jury trial right). A number of them have relied on *Meeker v. LeHigh Valley R.R. Co.,* 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644 (1915), in which the Supreme Court held that a provision permitting the introduction of the prior findings and order of the Interstate Commerce Commission as prima facie evidence of facts contained therein in a civil action by a shipper against a carrier does not violate the right to trial by jury. In rejecting arguments to the contrary, the Court stated:

> This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most, therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury, or take away any of its incidents.

*Id.* at 430, 35 S.Ct. at 335, 59 L.Ed. at 657.

In a similar vein, some courts have characterized provisions authorizing the admissibility of medical review panel findings as simply evidentiary rules allowing a specialized form of expert opinion. *E.g., Eastin,* 570 P.2d at 749; *Attorney General v. Johnson,* 385 A.2d at 68; *Prendergast,* 256 N.W.2d at 666; *Comiskey,* 390 N.Y.S.2d at 126; *Strykowski,* 261 N.W.2d at 451. Thus viewed, such provisions have been found constitutionally unobjectionable on the ground that litigants have no vested right in particular rules of evidence. *E.g., Strykowski,* 261 N.W.2d at 451; *cf. Arctic Structures, Inc. v. Wedmore,* 605 P.2d 426, 436 (Alaska 1979) (no one has vested right in any mode of procedure such that legislative change is prohibited by due process).

253 U.S. at 309–11, 40 S.Ct. at 546, 64 L.Ed. at 923–24 (citations omitted).[5]

The auditor's report in *Peterson* was subject to the approval or rejection of the trial court, and similar safeguards are included in AS 09.55.536. For example, the report of the panel with any dissenting or concurring opinion is admissible "to the same extent as though its contents were orally testified to by the person or persons preparing it," and the trial court must "delete any portion that would not be admissible because of lack of foundation for opinion testimony, or otherwise." AS 09.55.-536(e). Further, either party may submit testimony to support or refute the report; the trial court must instruct the jury to consider and evaluate the report in the same manner as any other expert testimony; and any panel member may be called by any party and cross-examined as to the contents of the report or of that member's dissenting or concurring opinion.[6] *Id.; see also* AS 09.55.536(d) ("A member may not

attest to any portion of the report as to which the member is not qualified to give expert testimony.").

Alaska's expert panel review statute allows the panel to meet in camera and thus does not, unlike similar statutes enacted in some other states, establish a hearing-type procedure by which the parties dictate what evidence the panel considers. *See* AS 09.55.536(b), *supra* note 1. However, it does require the panel to maintain a record of the testimony and statements it considers,[7] thereby informing the parties as to the basis for the panel opinion and enabling them at trial to introduce the same evidence in order to buttress or to impeach that opinion. *Cf. Strykowski*, 261 N.W.2d at 451. Nothing in the statute precludes the parties from presenting the evidence and arguments concerning the merits of the case that they would have presented in the absence of the pre-trial panel review. *See Attorney General v. Johnson*, 385

**5.** *See also DiFilippo v. Beck*, 520 F.Supp. 1009, 1017 (D.Del.1981) (seventh amendment does not require that jury findings be made at earliest possible date or that a particular kind or quality of evidence be presented to jury); *cf. Patrick v. Sedwick*, 391 P.2d 453, 459 (Alaska 1964) (upholding constitutionality of rule providing that failure to make demand constitutes waiver of right to jury trial because it does not amount to "unreasonable regulation of the manner of exercising the right").

**6.** *See also Beatty*, 424 N.E.2d at 589 (citing similar protections afforded litigants under Ohio statute); *Perna v. Pirozzi*, 92 N.J. 446, 457 A.2d 431, 436–37 (1983) (suggesting that lack of transcript of in camera panel hearing impairs effectiveness of cross-examination of panel members but does not constitute deprivation of jury trial right); *cf. Woods*, 591 F.2d at 1179–80 (rejecting contention that statutory prohibition against calling panel members to testify renders admissibility provision unconstitutional, on grounds that panel finding is not conclusive evidence and parties remain free to present at trial the same witnesses and exhibits that the panel considered).

We concur in the reasoning of those authorities which, in sustaining the requirement of pre-trial panel review against a jury trial attack, have analogized it to the compulsory reference of a case to a special master. *See, e.g., Woods*, 591 F.2d at 1179; *Strykowski*, 261 N.W.2d at 452; *see also Attorney General v. Johnson*, 385 A.2d at 65 n. 14; Fordham Note, *supra* note 3, at 330, 335–36. Alaska Civil Rule 53 authorizes

the use of a master and provides for the admissibility of his findings in jury cases. *See* Alaska R.Civ.P. 53(d)(3). A number of cases have held that its federal counterpart does not violate the constitutional jury trial guarantee. *E.g., Crateo, Inc. v. Intermark, Inc.*, 536 F.2d 862, 867–68 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976); *Burgess v. Williams*, 302 F.2d 91, 94 (4th Cir.1962). *See generally* 9 C. Wright and A. Miller, *Federal Practice and Procedure*, §§ 2602, 2604 (1971).

**7.** AS 09.55.536(b). Section .536(d) also provides:

In any case in which the answer to one or more of the questions submitted to the panel depends upon the resolution of factual questions which are not the proper subject of expert opinion, the report shall so state and may answer questions based upon hypothetical facts that are fully set out in the opinion. The report shall include copies of all written statements, opinions, or records relied upon by the panel and either a transcription or other record of any oral statements or opinions; shall specify any medical or scientific authority relied upon by the panel; and shall include the results of any physical or mental examination performed on the plaintiff. Each member shall sign the report and the signature constitutes the member's adoption of all statements and opinions contained in it; however, a member may, instead of signing the report, submit a concurring or dissenting report which complies with the requirements of this subsection....

A.2d at 70; *Strykowski*, 261 N.W.2d at 451.

■ Finally, we also reject Keyes' contention that the admissibility of a panel report adverse to the malpractice claimant violates his or her right to a jury trial by impermissibly increasing the burden of persuasion. In addressing an identical claim leveled against the Indiana medical malpractice review statute, that state's supreme court explained:

> It is fairly to be argued that the verdict of the jury will depend upon the impact of the panel's [unfavorable] "expert opinion," and that the plaintiff must overcome such impact if he is to win. This effect, however, cannot be separated from the trial as a whole if its impact is to be fairly assessed. No panel opinion unfavorable to a plaintiff can reach the jury unless plaintiff has first presented a prima facie case ... [of] the elements of the claim ... including the breach of duty by the health care provider defendant. It would be an exceedingly rare case in which expert testimony would not be included in the prima facie case. When after the prima facie case has been made and the panel opinion introduced by defendant, the jury considers its verdict, it will then weigh the competing expert opinions. For our purposes here we do not find this situation significantly different from the situation in which a plaintiff presents but a lone general practitioner witness and the defendant then fields three distinguished specialists. The legal burden of persuasion has remained

the same, but the task of the plaintiff to persuade has been increased enormously. The increased expenditure of money and effort required in such circumstances to convince the jury that plaintiff should prevail is consonant with our adversary system and the constitutional guarantee of the right to trial by jury.

*St. Vincent Hosp.*, 404 N.E.2d at 593; *accord Lacy v. Green*, 428 A.2d 1171, 1176–77 (Del.Super.1981) ("What results is both sides answering to the other's so-called prima facie evidence. Thus, the jury alone is left with weighing the competing 'expert opinions.'"), *approved in DiFilippo v. Beck*, 520 F.Supp. at 1014.[8]

We find distinguishable from the case at bar those cases which have invalidated statutes allowing the admission of panel reports as depriving litigants of their right to a jury trial. In *Mattos v. Thompson*, 491 Pa. 385, 421 A.2d 190, 196 (1980), the Pennsylvania Supreme Court held unconstitutional a statute which gave health care arbitration panels original jurisdiction over medical malpractice claims. The court based its decision on statistical evidence that the delays involved in processing claims under the statutory procedures oppressively burdened the right of a jury trial so as to "'make the right practically unavailable,'" concluding that the actual operation of the arbitration procedure was not "'reasonably designed to effectuate the desired objective' of affording 'the plaintiff a swifter adjudication of his claim, at a minimal cost.'"[9] *Id.* 421 A.2d at 195

---

**8.** *See also Attorney General v. Johnson*, 385 A.2d at 68–69 (burden of proof remains with plaintiff but "[t]hat the legislature may, in any event, pass rules affecting the burden of proof without infringing the right to jury trial is not to be doubted...."). *See generally* Redish, *supra* note 3, at 793 ("The right to a jury trial is not denied merely because one's opponent presents overwhelmingly strong evidence in his favor. The party losing at the screening panel stage still has the opportunity to counter the evidence at the trial.").

Of particular relevance both here and in regard to the equal protection challenge addressed below, *see* Part D, is the fact that the admissibility of the panel report could adversely affect the medical malpractice defendant as well as the claimant: "If the report was adverse to the

medical care provider, it would promote the claimant's action. It is a two-way street which equally affects the parties on both sides." *Prendergast*, 256 N.W.2d at 666. Thus, AS 09.55.536 cannot be said to accord special status to (or to confer a special benefit or privilege upon) medical care providers as a group by tending to exempt them from liability. Keyes has marshalled no statistical evidence suggesting that the results in medical malpractice cases in which the panel review procedure has been employed have in fact favored the defendants.

**9.** The court elaborated:

> The findings made by the Commonwealth Court indicate that the arbitration panels provided for under the Act are incapable of providing the "prompt determination and adjudi-

(quoting *Parker v. Children's Hosp. of Philadelphia,* 483 Pa. 106, 394 A.2d 932, 939 (1978) (holding that statute was too new to determine whether its actual operation resulted in unconstitutional infringement on jury trial right)). In concluding, the court narrowed its holding and expressed confidence in arbitration as a viable alternative to litigation in many areas, stating that its conclusion "merely indicates the inability of *this* statutory scheme to provide an effective alternative dispute resolution forum in the area of medical malpractice." *Id.* 421 A.2d at 196 (emphasis added).

We believe the reasoning of the Pennsylvania court is inapposite to the instant challenge to AS 09.55.536. Not only does the Alaska panel review procedure ensure that a malpractice plaintiff's case proceeds along the normal path to litigation after a maximum delay of eighty days,[10] but the parties to this appeal have proffered no statistical evidence such as that relied on to invalidate the arbitration procedure in *Mattos. See Lacy,* 428 A.2d at 1180 n. 4 (dismissing *Mattos* based on lack of statistical evidence presented by parties).

Similarly, the Illinois Supreme Court's invalidation of mandatory pre-trial review by a medical panel as impairing the right to jury trial does not rest on a rationale applicable to AS 09.55.536. The court first declared the statutory requirement unconstitutional because the statute vested a judicial function in nonjudicial personnel. *Wright v. Central Du Page Hosp. Ass'n,* 63 Ill.2d 313, 347 N.E.2d 736, 739–40 (1976).

The court then relied on this holding to find that the statute also violated the jury trial right:

> *Because* we have held that these statutes providing for medical review panels are unconstitutional, *it follows* that the procedure prescribed therein as the prerequisite to jury trial is an impermissible restriction on the right of trial by jury guaranteed by article I, section 13, of the Illinois Constitution.

*Id.* 347 N.E.2d at 741 (emphasis added); *see Woods,* 591 F.2d at 1171 n. 11 (distinguishing *Wright* on this basis); *Strykowski,* 261 N.W.2d at 450 (same); Redish, *supra* note 3, at 793–94. The Illinois statute under scrutiny established a very different function for the medical review panel than does AS 09.55.536.[11] Under the Illinois provision, the panel's recommendation as to liability and the amount of damages served as the sole basis for the entry of judgment thereon when it was utilized (i.e., the parties agreed to be bound by it or unanimously accepted its ultimate determination); otherwise, trial proceeded as in any other civil case and the panel's determination was not admissible. *Wright,* 347 N.E.2d at 738–39. Either way, the panel's recommendation was never subjected to jury scrutiny. *See Prendergast,* 256 N.W.2d at 666; *Comiskey,* 390 N.Y.S.2d at 127 (distinguishing *Wright* based on differences in statutory terms).

■ In short, the rationales of *Mattos* and *Wright* suggest no principled basis for invalidating AS 09.55.536. We therefore

cation" of medical malpractice claims which was the goal of the Act.... Papers filed with this Court included a statistical analysis of the health care panels up to May 31, 1980 ... [which] reveal[s] ... that 73 per cent of the cases filed with the administrator have not been resolved. Even worse, six of the original 48 cases filed in 1976 remain unresolved.... Furthermore, ... 38 per cent of the claims filed in 1977, 65 per cent of the claims filed in 1978, and 85 per cent of the claims filed in 1979 remain unresolved. Such delays are unconscionable and irreparably rip the fabric of public confidence in the efficiency and effectiveness of our judicial system. Most importantly, these statistics amply demonstrate that "the legislative scheme is incapable of achieving its stated purpose."

421 A.2d at 195 (citations omitted).

10. The panel must be appointed within 20 days after the defendant files an answer to the complaint and must submit its written report to the parties and the court within 30 days after the appointment. AS 09.55.536(a), (c). Upon application, the court may grant the panel a 30–day extension to complete its report, and discovery may commence upon receipt of the report. AS 09.55.536(f). *See Roethler v. Lutheran Hosps. & Homes Soc'y,* 709 P.2d 487, 488 n. 2 (Alaska 1985).

11. Like the Pennsylvania court in *Mattos,* the Illinois court expressed the belief that a valid statutory pre-trial review procedure could be devised. *Wright,* 347 N.E.2d at 741.

adhere to the view which has emerged from the remaining jurisdictions which have considered the point and hold that the statute does not impermissibly infringe on the constitutional right to a jury trial by requiring pre-trial review of medical malpractice claims by an expert advisory panel.[12]

B. *Due Process.*

Keyes claims that AS 09.55.536 denies her due process of law as guaranteed by article I, section 7 of the Alaska Constitution. She contends that the following due process violations flow from the operation of the statute: (1) the denial of the right to a jury trial, which we have already addressed, *supra* Part A; (2) the difference in treatment accorded medical malpractice litigants in contrast with other litigants, by virtue of the requirement that malpractice claims be submitted to the review panel, which has no rational relationship to a legitimate state purpose; (3) the lack of procedural safeguards which would be present in an adversarial judicial proceeding, including an opportunity for the parties to present evidence and make arguments before the panel, to cross-examine witnesses appearing before the panel and to conduct

discovery before the panel convenes; and (4) the lack of an impartial decisionmaker, because the medical review panel is composed of physicians and the statute contains no mechanism for disqualifying a panel member based on actual bias. Keyes contends that due process before the panel is necessary because the jury's role under AS 09.55.536 "is transformed from one of primary fact finder to one of a reviewing function over the panel's decision."

1. *Substantive Due Process.*

■ Keyes' claim that due process is violated because there is no justification for the requirement that only medical malpractice cases and not other tort cases are subject to pre-trial screening essentially alleges deprivation of substantive due process. Under the Alaska Constitution, substantive due process is denied "when a legislative enactment has no reasonable relationship to a legitimate governmental purpose." *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough,* 527 P.2d 447, 452 (Alaska 1974); *see also State v. Rice,* 626 P.2d 104, 110 (Alaska 1981). The constitutional guarantee of substantive due process assures that a legislative body's decision is not arbitrary but

12. Keyes does not make the argument that pre-trial screening by a medical review panel violates the constitutional jury trial guarantee because it obstructs a litigant's access to a jury. We observe that those courts faced with this claim have held that requiring a medical malpractice plaintiff to begin the process of obtaining a final determination of his claim by submitting it to the panel is a permissible interference with the jury trial right. *See, e.g., Woods,* 591 F.2d at 1179–80; *Eastin,* 570 F.2d at 748; *St. Vincent Hosp.,* 404 N.E.2d at 592 (delay in commencement of trial and expense of investigating and marshalling evidence do not alter or change the substantial elements and incidents of jury trial right for either party); *Linder v. Smith,* 629 P.2d 1187, 1189–90 (Mont.1981) (noting other approved pre-trial procedures, such as mandatory pre-trial conferences and submission of a case to a master, which similarly burden a litigant's attempt to get into court); *Strykowski,* 261 N.W.2d at 450 (panel review procedure imposes no greater burden than administrative agency proceedings of which would-be litigants are generally required to avail themselves before trial under exhaustion-of-remedies rule); *cf. Paro v. Longwood Hosp.,* 373 Mass. 645, 369 N.E.2d 985, 991 (1977) (upholding requirement

that claimant post a bond as a condition for further prosecution if panel determines that no "legitimate question of liability appropriate for judicial inquiry" exists).

In this regard we find apropos the Pennsylvania Supreme Court's discussion of compulsory arbitration:

"[The Constitution] does not prescribe at what stage of an action a trial by jury must, if demanded, be had, or what conditions may be imposed upon the demand of such a trial, consistently with preserving the right to it." *The only purpose of the constitutional provision is to secure the right of trial by jury before rights of person or property are finally determined.* All that is required is that the right of appeal for the purpose of presenting the issue to a jury must not be burdened by the imposition of onerous conditions, restrictions or regulations which would make the right practically unavailable.

*Application of Smith,* 381 Pa. 223, 112 A.2d 625, 629 (quoting *Capital Traction Co. v. Hof,* 174 U.S. 1, 23, 19 S.Ct. 580, 589, 43 L.Ed. 873) (emphasis added), *appeal dismissed sub nom. Smith v. Wissler,* 350 U.S. 858, 76 S.Ct. 105, 100 L.Ed. 762 (1955).

instead based on some rational policy. *Concerned Citizens,* 527 P.2d at 452. If any conceivable legitimate public policy for the enactment is either apparent or offered by those defending the enactment, the party challenging it must disprove the factual basis for the justification.[13] *Id.*

Courts in other jurisdictions have uniformly rejected substantive due process attacks on statutes authorizing medical review panels. Each of them has found the review procedure to be a reasonable legislative response to a perceived crisis in medical malpractice insurance rates, a means of assuring the availability of malpractice insurance coverage at reasonable rates and of improving the availability and reducing the cost of medical care in general, by attempting to eliminate frivolous malpractice claims and encourage settlement of meritorious ones. *See, e.g., Woods,* 591 F.2d at 1176; *Everett v. Goldman,* 359 So.2d 1256, 1268 (La.1978); *St. Vincent Hosp.,* 404 N.E.2d at 594; *Linder v. Smith,* 629 P.2d 1187, 1192 (Mont.1981); *Prendergast,* 256 N.W.2d at 667, 668; *Otero v. Zouhar,* 102 N.M. 493, 697 P.2d 493, 503 (App.1984), *aff'd in part and rev'd in part on other grounds,* 102 N.M. 482, 697 P.2d 482 (1985); *Treyball,* 493 N.Y.S.2d at 1005, 483 N.E.2d at 1137.

██ It is virtually beyond dispute that the purpose of the numerous panel review procedures (including Alaska's) enacted during the early and mid–1970's was to alleviate the effects of the malpractice in-surance crisis. *See Report of the Governor's Medical Malpractice Insurance Commission,* October 1, 1975, at 1–3, 26; Letter of Langhorne A. Motley to Governor Jay Hammond (accompanying *Report*), October 1, 1975; *Roethler v. Lutheran Hosps. & Homes Soc'y,* 709 P.2d 487, 489 (Alaska 1985). *See also Linder,* 629 P.2d at 1191; *Beatty,* 424 N.E.2d at 593; *Attorney General v. Johnson,* 385 A.2d at 77 ("One would, in fact, have to be an ostrich to suggest that no medical malpractice insurance problems existed which the legislature could appropriately attempt to resolve.").[14] Keyes in fact concedes that this was the purpose of AS 09.55.536. Therefore, without some demonstration that AS 09.55.536 has in fact failed to achieve this purpose, we see no reason to depart from the result reached in other jurisdictions and accordingly hold that the statute does not deny medical malpractice plaintiffs substantive due process.

*2. Procedural Due Process.*

██ Keyes' remaining claims under Alaska Constitution article I, section 7 concern alleged violations of procedural due process. We have previously indicated that "[w]hat procedural due process may require under any particular set of circumstances depends on the nature of the governmental function involved and the private interest affected by the governmental action." *Arctic Structures, Inc. v. Wedmore,* 605 P.2d 426, 436 (Alaska 1979); *see also McMillan v. Anchorage Community*

---

**13.** Of particular relevance to the challenge made by Keyes here is the rule that the federal due process guarantee does not "prevent a state from prescribing a reasonable and appropriate condition precedent to the bringing of a suit of a specified kind or class so long as the basis of distinction is real and the condition imposed has reasonable relation to a legitimate object." *Jones v. Union Guano Co.,* 264 U.S. 171, 181, 44 S.Ct. 280, 282, 68 L.Ed. 623, 628 (1924) (upholding state statute providing that no suit for damages to crops resulting from fertilizer use may be brought except after chemical analysis showing deficiency of ingredients); *see also Prendergast,* 256 N.W.2d at 668 (legislature may pass law which seeks to distinguish between different types of tort actions so long as distinctions are reasonable and grounded upon real differences inherent in those actions). The fact that medical malpractice cases almost invariably re-quire medical expert testimony and that Alaska's panel review procedure will only come into play in cases requiring such testimony (since section .536(a) allows the trial court to decline to appoint an expert panel if it determines that expert opinion will not be necessary to decide the case) clearly suggests that the basis for the distinction among tort cases drawn by the statute is "real."

**14.** *See generally,* Redish, *supra* note 3, at 759–61; Comment, *An Analysis of State Legislative Responses to the Medical Malpractice Crisis,* 1975 Duke L.J. 1417, 1417; Abraham, *Medical Malpractice Reform: A Preliminary Analysis,* 36 Md. L.Rev. 489, 513–14 (1977); Comment, *Recent Medical Malpractice Legislation—A First Checkup,* 50 Tulane L.Rev. 655, 679–80 (1976).

*Hosp.,* 646 P.2d 857, 863–64 (Alaska 1982). The crux of due process is an opportunity to be heard and the right to adequately represent one's interests. *Matanuska Maid, Inc. v. State,* 620 P.2d 182, 192 (Alaska 1980) (citing *Hansberry v. Lee,* 311 U.S. 32, 42, 61 S.Ct. 115, 118, 85 L.Ed. 22, 27 (1940)). Due process is satisfied if the statutory procedures provide an opportunity to be heard in court at a meaningful time and in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18, 32 (1976) (holding administrative tribunal need not mirror judicial procedures). Identification of the specific dictates of due process generally involves consideration of three distinct factors: the private interest affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail. *Id.* at 334–35, 96 S.Ct. at 902–03, 47 L.Ed.2d at 33, *quoted in City of Homer v. State,* 566 P.2d 1314, 1319 (Alaska 1977); *see also Hilbers v. Municipality of Anchorage,* 611 P.2d 31, 36 (Alaska 1980).

█ As noted above, Keyes in essence argues that the procedural safeguards which inhere in an adversarial trial proceeding must also attend the review panel's evaluation of a claim because the panel's determination carries such great weight when admitted at the subsequent trial. We disagree. As explained by the federal district court which upheld the Delaware pretrial medical panel review statute:

> Without question the panel procedures required by the Act fall within requirements of *Mathews v. Eldridge.*
>
> However, *the Court need not even consider the procedures mandated for the review panel in order to find that the admission of the panel's opinion in the trial of this case would not violate the due process guarantee. This is so because the parties are given a full opportunity to litigate their positions before the jury* where they will be able to adduce contrary evidence, refute the evidence relied upon by the panel, and cross-examine any witnesses relied upon by the panel. The panel's opinion, although prima facie evidence, is not conclusive. Thus, *the procedures for a review panel,* [sic] *are, by analogy, no more than the appointment of a neutral expert at a party's request.* The admissibility of such an "expert's" opinion, which can be fully challenged before the jury, clearly does not violate due process.

*DiFilippo,* 520 F.Supp. at 1018 (emphasis added and citations omitted).[15] We adopt this same view with respect to AS 09.55.536 and therefore reject Keyes' general allegations of procedural due process violations.

█ We also find meritless Keyes' specific claim that a panel composed of physicians offends notions of due process because it does not constitute an impartial decisionmaker.[16] She does not assert that

---

15. An often cited discussion of due process requirements by the Pennsylvania Supreme Court with respect to mandatory arbitration also supports our conclusion that AS 09.55.536 does not violate due process:

> [C]ompulsory arbitration conflicts also with the 14th Amendment of the Federal Constitution in that it works a deprivation of property and liberty of contract without due process of law. But this is so only where the statute closes the courts to litigants and makes the decision of the arbitrators the final determination of the rights of the parties; therefore there is no denial of the right of trial by jury if the statute preserves that right to each of the parties by the allowance of an appeal from the decision of the arbitrators or other tribunal.

*Application of Smith,* 112 A.2d at 629 (citations omitted).

16. Keyes asserts without authority that only physicians may serve on the panel. This is contrary to the language of section .536(a), which directs the superior court to "determine the professions or specialties to be represented on the expert advisory panel," giving the parties the opportunity to object or make suggestions. *See also* Alaska R.Civ.P. 72.1(a) (Eff. 8/1/87) ("Either party may recommend that the court appoint specific professions or specialties to the expert advisory panel.") However, it appears to be standard practice to appoint only physicians as panel members.

actual bias exists in this case or that a particular procedure for selecting panel members creates a probability of systematic bias, but instead bases her claim on the status of the panel members, who, like the defendants, are local health care providers.[17] Essentially identical contentions have been summarily dismissed in other jurisdictions. *See, e.g., DiFilippo*, 520 F.Supp. at 1017; *Lacy*, 428 A.2d at 1180; *Linder*, 629 P.2d at 1192; *Strykowski*, 261 N.W.2d at 445–46; *cf. Morris v. Metriyakool*, 418 Mich. 423, 344 N.W.2d 736, 740–41 (1984) (rejecting arguments that panel members had pecuniary interest in lower malpractice insurance premiums which created risk of actual bias too high to be constitutionally tolerable or had subliminal bias against malpractice plaintiffs).[18]

Keyes ignores the fact that, given the complex medical issues involved in malpractice cases, the goal of an expert panel review statute would be completely thwarted without the specialized expertise of medically-trained panel members, *see Strykowski*, 261 N.W.2d at 446, and that for the same reason professionals are often permitted to sit on administrative boards dealing with disciplinary proceedings for members of their own professions. *See Natchez v. State*, 721 P.2d 361, 363–64 (Nev.1986) (quoting *Kachian v. Optometry Examining Bd.*, 44 Wis.2d 1, 170 N.W.2d 743 (1969)); *see also Schullman v. State Bar*, 10 Cal.3d 526, 111 Cal.Rptr. 161, 168 & n. 5, 516 P.2d 865, 872 & n. 5 (1973). Moreover, even apart from the speculative nature of the bias claimed by Keyes, "if there is a risk that the panel opinion will favor the health care provider ... simply by reason of the makeup of the panel, the jury can be made aware of it through articulate and imaginative advocacy." *St. Vincent Hosp.*, 404 N.E.2d at 593. Finally, AS 09.55.536 itself contains explicit safeguards against such bias in that it affords the parties an opportunity to object or make suggestions regarding the court's determination of the professions or specialties to be represented on the panel, section .536(a);[19] prohibits parties and their counsel from initiating ex parte communications with the panel members concerning the case, section .536(h);[20] provides for compensation of panel members by the court in accordance with established fee schedules, section .536(g);[21] and requires the court to delete from the panel report any portion that would not otherwise be admissible, section .536(e).

In conclusion, Keyes has failed to show that the panel review procedures of AS 09.55.536 create any risk of an erroneous deprivation of her interest in litigating her malpractice claim. Keyes would have the

17. The statute, however, does not have a local or state residency requirement for panel members.

18. *See also Gronne v. Abrams*, 793 F.2d 74, 79 (2d Cir.1986) (stating that even if eighty percent of state's doctors are insureds and shareholders in a single insurance company, it is still not inevitable that both the doctor assigned to a panel and the defendant would be within that percentage, and emphasizing that the statute allows a party to object to the selection of the panel doctor); *cf. Woods*, 591 F.2d at 1177 (citing specific statutory procedures for selecting panel members as protecting against potential bias); *Attorney General v. Johnson*, 385 A.2d at 70 (same).

19. *See also* Alaska R.Civ.P. 72.1(b) (Eff. 8/1/87) (allowing party to move to disqualify panel appointee and requiring appointees to inform court of any financial relationship or other reason which would cause bias or appearance of bias).

20. AS 09.55.536(h) provides:

Parties to the case and their counsel may not initiate communication out of court with members of the panel on the subject matter of its inquiry and report or cause or solicit others to do so, except through ordinary discovery proceedings.

21. AS 09.55.536(g) provides:

Members of the panel are entitled to travel expenses and per diem in accordance with state law pertaining to members of boards and commissions for all time spent in preparing its report. If a panel member is called upon as a witness at trial or upon deposition, the member is entitled to payment of an expert witness fee, which may not exceed $150 per day. All expenses incurred by the panel shall be paid by the court. However, in any case in which the court determines that a party has made a patently frivolous claim or a patently frivolous denial of liability, it shall order that all costs of the expert advisory panel be borne by the party making that claim or denial.

panel mirror the adversarial adjudicatory procedures employed in judicial proceedings, but the probable value of such safeguards seems insignificant given the probability that the panel report carries no greater evidentiary weight than any other expert opinion, and the parties can cross-examine the panel members about the foundation for their opinion. *Cf. Haisley v. Grant,* 486 P.2d 367, 371 (Alaska 1971) (noting "reaffirm[ance of] our liberal view favoring the admission of expert testimony if based upon sufficient facts and if the trial judge believes that the jury could receive 'appreciable assistance' from it"). Thus, the protections of procedural due process do not require us to declare AS 09.55.536 unconstitutional.

## C. *Delegation of Judicial Power.*

Keyes argues that AS 09.55.536 contravenes the separation of powers principles inherent in article IV, section 1 of the Alaska Constitution [22] by vesting judicial power in nonjudicial personnel. Keyes contends that the statute confers judicial authority on the members of the review panel in that they can compel the appearance of witnesses and production of documents, interview the parties, examine the plaintiff's physical

condition, AS 09.55.536(b), and ultimately make factual findings and draw legal conclusions concerning issues of liability and damages.[23]

We are aware of only one appellate court that has accepted an argument like Keyes' and held a system of screening panels for medical malpractice cases unconstitutional based on its improper delegation of judicial function. In *Wright v. Central Du Page Hosp. Ass'n,* 63 Ill.2d 313, 347 N.E.2d 736, 739–40 (Ill.1976), the Illinois Supreme Court invalidated statutes empowering a panel composed of a circuit judge, a practicing physician, and a practicing attorney to make a determination as to liability and, upon finding liability, as to damages. Proceedings before the panel were adversarial, with each party entitled to call and cross-examine witnesses and to introduce evidence. *Id.* 347 N.E.2d at 738. As noted above, the parties could agree to be bound by the panel's decision, in which case judgment would be entered thereon; otherwise, each party had to accept or reject any unanimous decision of the panel, with a failure to reject being deemed an acceptance. *Id.* Whenever the parties had neither agreed to be bound nor accepted the decision, the panel judge conducted a pre-

**22.** Alaska Const. art. IV, § 1 provides in part: *Judicial Power and Jurisdiction.* The judicial power of the State is vested in a supreme court, a superior court, and the courts established by the legislature. The jurisdiction of courts shall be prescribed by law. The courts shall constitute a unified judicial system for operation and administration.

Keyes identifies the separation of powers in this section, placed in opposition to the constitutional provisions which establish separate legislative and executive powers. *See* Alaska Const. art. II, § 1; art. III, § 1.

**23.** AS 09.55.536(c) directs the panel to make a written report answering the following questions and other questions submitted to it by the court:

(1) What was the disorder for which the plaintiff came to medical care?
(2) What would have been the probable outcome without medical care?
(3) Was the treatment selected appropriate for the case?
(4) Did an injury arise from the medical care?
(5) What is the nature and extent of the medical injury?

(6) What specifically caused the medical injury?
(7) Was the medical injury caused by unskillful care?
(8) If a medical injury had not occurred, how would the plaintiff's condition differ from the plaintiff's present condition?

We also note Keyes' complaint that the panel decides critical issues regarding the admissibility of evidence and credibility of witnesses which are not "proper subjects of expert opinion," that the statute makes no provision for a judicial officer to rule on evidentiary questions. This claim fails in light of settled rules of evidence which allow experts to testify on the "ultimate issue to be decided by the trier of fact" and to base opinion testimony on facts or data which would not be admissible in evidence so long as they are of a type "reasonably relied upon" by experts in the relevant field, and the statutory proviso requiring the court to delete any portion of the panel report that would not be admissible "because of lack of foundation for opinion testimony, or otherwise." *See* Alaska R.Evid. 703, 704; AS 09.55.536(e).

trial conference and the case proceeded to trial, during which the panel's decision was not admissible. *Id.* at 738–39.

In reaching its conclusion that this system impermissibly granted judicial power to nonjudicial personnel, the Illinois court observed:

> Section 58.6 ... provides that the circuit judge member of the medical review panel "shall preside over all proceedings of the panel and shall determine all procedural issues, including matters of evidence." But as to other issues, both legal and factual, the power and function of the lawyer and physician member of the panel are the same as that of the judge. Furthermore, the powers of the judge concerning the determination of "matters of evidence" are diluted by the provision that "The law of evidence shall be followed, except as the panel in its discretion may determine otherwise." (Par. 58.6.) Section 58.7 provides that "The panel shall make its determination according to the applicable substantive law," and by its terms, the lawyer and physician member are vested with authority, equal to that of the judge, to determine and apply the "substantive law."

*Id.* at 739. The court then concluded that these provisions empowered the nonjudicial members of the panel "to make conclusions of law and fact 'according to the applicable substantive law' over the dissent of the circuit judge" and thereby to exercise a judicial function in violation of the Illinois constitutional provision analogous to Alaska Const. art. IV, § 1. *Id.* at 739–40.[24]

A critical difference between the Illinois and Alaska panel review statutes renders the foregoing reasoning inapplicable to this case: the panel's determination served as the sole basis for entry of judgment in Illinois if the parties so agreed, whereas in Alaska it serves only as an expert opinion at trial. On this basis, courts in all jurisdictions save Illinois which have faced delegation of judicial power attacks on their medical panel review statutes have upheld them.[25] Most have relied on the maxim that "the essence of judicial power is the final authority to render and enforce a judgment," and thus found no separation of powers problems because the actions of the panel are at most advisory and its decision has no more weight than an expert opinion. *See DiAntonio v. Northampton-Accomack Mem. Hosp.*, 628 F.2d 287, 292 (4th Cir.1980) (Virginia law); *Eastin*, 570 P.2d at 750; *Lacy*, 428 A.2d at 1178; *Pren-*

---

**24.** More recently, the Illinois Supreme Court invalidated similar statutory procedures for review of claims of healing-art malpractice. The provisions at issue in *Bernier v. Burris*, 113 Ill.2d 219, 100 Ill.Dec. 585, 497 N.E.2d 763 (1986), differed from those found unconstitutional in *Wright* in that they required (1) the judge on the panel to determine all questions of law, including matters of evidence, with the law of evidence to be followed, as determined by the judge; and (2) the panel to make its decision according to the substantive law as determined by the judge, with its written decision to contain the judge's conclusions of law and the panel's conclusions of fact. *See Bernier*, 100 Ill.Dec. at 592–93, 497 N.E.2d at 770–71 (discussing Ill.Rev. Stat. ch. 110, ¶¶ 2–1016(a), 2–1017(a) (1985)). According to the court, however, the fact that these provisions made the judicial member of the panel the sole authority over legal issues did not eliminate the problem previously identified in *Wright*, because the fact-finding functions of the judicial and non-judicial members of the panel remained blended, and the members shared fact-finding and decision-making authority. *Id.* 100 Ill.Dec. at 592–93, 497 N.E.2d at 770–71. *But see Paro v. Longwood Hosp.*, 373

Mass. 645, 369 N.E.2d 985, 992–93 (1977) (rejecting argument that statute unconstitutionally allows lay members of panel to override judge's decision of purely legal issues where panel decision is collective and legal questions are left solely to judge).

**25.** A number of the cases have also specifically distinguished *Wright* on this basis. *E.g., Attorney General v. Johnson*, 385 A.2d at 66–67; *Prendergast*, 256 N.W.2d at 666 ("the medical review panel in the Illinois case was not a panel to provide evidence but was a panel to decide the controversy"); *see also* Redish, *supra* note 3, at 794; *cf. St. Vincent Hosp.*, 404 N.E.2d at 598 (rule is for admission rather than exclusion of evidence and does not usurp judicial authority to rule upon admissibility of evidence since courts have previously sanctioned admission of medical expert opinion). *But cf. Arneson v. Olson*, 270 N.W.2d 125, 132 (N.D.1978) (section of act seeking to limit res ipsa loquitor doctrine by requiring expert testimony or admission of fault in order to impose liability unconstitutionally invades judicial power to establish rules of procedure regarding admissibility of evidence).

*dergast,* 256 N.W.2d at 666–67; *Otero,* 697 P.2d at 502. We agree with this analysis.[26]

■ Having found no apposite judicial authority, and no independent basis, for Keyes' claim that the panel review procedure of AS 09.55.536 authorizes an invasion of judicial function by the panel, we decline to invalidate the statute on this ground.

## D. *Equal Protection.*[27]

A further contention is that AS 09.55.536 violates equal protection guarantees of the Alaska Constitution by creating an impermissible classification, treating medical malpractice litigants differently from those involved in other kinds of tort cases. Courts in every jurisdiction which have addressed such contentions have sustained their review panel statutes, the overwhelming majority doing so on the ground that the statutes are rationally related to effectuating a legitimate governmental purpose.[28] *See, e.g., DiAntonio,* 628 F.2d at 291; *Woods,* 591 F.2d at 1174–75; *Eastin,* 570 P.2d at 751; *Lacy,* 428 A.2d at 1177–78; *Everett,* 359 So.2d at 1267; *Attorney General v. Johnson,* 385 A.2d at 77; *Paro,* 369 N.E.2d at 988–89; *Linder,* 629 P.2d at 1193; *Prendergast,* 256 N.W.2d at 667–68, 669; *Perna,* 457 A.2d at 437; *Comiskey,* 390 N.Y.S.2d at 130; *Beatty,* 424 N.E.2d at 594–95; *Strykowski,* 261 N.W.2d at 442–43. They have uniformly declined to apply a "strict scrutiny" standard of review, most finding explicitly that the statute's classification neither implicates a suspect class nor impinges upon any fundamental right

which would justify this higher standard. *See, e.g., DiAntonio,* 628 F.2d at 291; *Woods,* 591 F.2d at 1173; *St. Vincent Hosp.,* 404 N.E.2d at 597; *Everett,* 359 So.2d at 1266; *Attorney General v. Johnson,* 385 A.2d at 77–78; *Linder,* 629 P.2d at 1193; *Beatty,* 424 N.E.2d at 592; *Strykowski,* 261 N.W.2d at 442.

■ Our approach to evaluating challenges brought under Alaska's equal protection clause involves a sliding scale of review ranging from relaxed to strict scrutiny. *State v. Ostrosky,* 667 P.2d 1184, 1192 (Alaska 1983), *appeal dismissed,* 467 U.S. 1201, 104 S.Ct. 2379, 81 L.Ed.2d 339 (1984). The appropriate standard of review is determined by the importance of the individual interests asserted and by the degree of suspicion with which we view the resulting classification. *Id.; see also Alaska Pac. Assurance Co. v. Brown,* 687 P.2d 264, 269–70 (Alaska 1984). Once this determination is made, we examine the governmental purposes served by the challenged statute and the closeness of the means-to-end fit between the legislation and those purposes. *Ostrosky,* 667 P.2d at 1193; *Brown,* 687 P.2d at 269. The higher the level of scrutiny applied, the more compelling the governmental purpose and the closer the means-to-end fit must be. At a minimum, the legislation must be based on a legitimate purpose and the classification "reasonable, not arbitrary, and ... rest upon some ground of difference having a fair and substantial relation" to that pur-

---

**26.** To sustain a claim of impermissible delegation of power like that made by Keyes here would mean that no administrative agency or commission performing a judicial or quasi-judicial function could survive constitutional scrutiny. *See, e.g., Lacy,* 428 A.2d at 1178; *Strykowski,* 261 N.W.2d at 448–49; *cf. Paro,* 369 N.E.2d at 992 (malpractice tribunal procedure functions in role as first step in obtaining judicial access not as legislative department, but as part of judicial process); *State v. Dupere,* 709 P.2d 493, 496–97 (Alaska 1985), *modified,* 721 P.2d 638 (Alaska 1986) (no separation of powers problem in making review of claim against legislature by executive department a prerequisite to judicial review).

**27.** In her opening brief, Keyes incorporates by reference the arguments that AS 09.55.536 violates constitutional guarantees of equal protec-

tion and of a right of access to the courts which she anticipated the parties intervening in this case to advance. (Her petition also alludes to equal protection problems within its discussion of due process.) Because we denied all motions to intervene in this case, these arguments have not been presented as anticipated. However, respondents have rebutted them, and we will address them here.

**28.** Regarding the purpose of these statutes in general and of AS 09.55.536 in particular, see Part B, *supra,* at 352.

The commentators are in agreement that medical panel review statutes present no equal protection problems. *See, e.g.,* Redish, *supra* note 3, at 771–82; Fordham Note, *supra* note 3, at 340.

pose. *Ostrosky*, 667 P.2d at 1193 (quoting *Isakson v. Rickey*, 550 P.2d 359, 362 (Alaska 1976) (describing this as more rigorous than traditional rational basis test with consequence that court will no longer hypothesize facts which would sustain otherwise questionable legislation)).[29]

■ Review of AS 09.55.536 with these principles in mind leads us to the same conclusion reached in other jurisdictions as to equal protection challenges. The individual right affected by the statute is the right of a litigant to proceed to trial in a medical malpractice lawsuit without submission of the claims in issue for panel review. A statutory limitation on this right can hardly be said to warrant a heightened standard of scrutiny when this court has previously said that a party's broader "interest in redressing wrongs through the judicial process" is only "significant," and an "interest in suing a particular party ... is not fundamental," such that an imperfect means-to-end fit will be tolerated. *See Wilson v. Municipality of Anchorage*, 669 P.2d 569, 572 (Alaska 1983).[30] Thus, applying a relatively low level of scrutiny on our "sliding scale," a conclusion that AS 09.55.536 bears a fair and substantial relation to its purposes is unavoidable absent some showing by Keyes that the statute is unlikely to encourage settlement and reduce litigation over malpractice claims.[31] Keyes has made no such showing, and the present record therefore furnishes no basis for finding AS 09.55.536 contrary to Alaska's constitutional guarantee of equal protection.

### E. *Right of Access to the Courts.*

The final potential challenge to AS 09.55.536 is that the statute unconstitutionally denies malpractice plaintiffs access to the courts by forcing them to wait to proceed to trial until after the expert panel has rendered its opinion. As noted above, application of the statute mandates a delay of at most eighty days before discovery may commence.

■ Most courts have rejected contentions that the added delay and expense caused by their panel review statutes impermissibly obstructs a malpractice claimant's access to the courts.[32] *See, e.g.,*

---

**29.** At least one court has upheld its panel review statute after applying an intermediate standard requiring the panel review requirement to bear a "fair and substantial relation" to the aim of the legislation. *See St. Vincent Hosp.*, 404 N.E.2d at 597.

**30.** *See also Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825, 830 (1980) (right to recover for personal injuries is not "fundamental" but is nevertheless "an important substantive right"). *But cf. Kenyon v. Hammer*, 142 Ariz. 69, 688 P.2d 961, 975 (1984) (right to bring and pursue medical malpractice action is "fundamental" but rational basis test applies to panel review provision because it does not affect this right).

**31.** In this regard we note our agreement with the view expressed by Maryland's highest court:
We have no difficulty in concluding that the legislative requirement that malpractice claimants, unlike other tort claimants, first present their contentions to an arbitration panel rests upon a ground of difference bearing a "fair and substantial relation" to the object of the legislation, which seeks to encourage the resolution of such claims without judicial proceedings, thus reducing their cost and consequently the cost of insurance. Obviously there can be no guarantee that the legislation will have the desired effect, thus substantially furthering legislative ends, but we think in a case such as this none is required. This is so because we are of the view that a principle we have applied in rejecting due process challenges to legislation claimed to be arbitrary is applicable here as well: that it is inappropriate for a court to preclude the legislature from attempting to resolve a problem in a particular manner simply because the intended results cannot be definitively demonstrated in advance.... The "fair and substantial relation" test is met, in a situation where the problem sought to be resolved is unique and the possible techniques for its solution are therefore untested, where the available evidence suggests the soundness of the theory. The burden is upon those who attack the legislation in such a case to show that it will not likely accomplish its goal. *Attorney General v. Johnson*, 385 A.2d at 79 (dicta) (footnote and citations omitted); *see also Carson*, 424 A.2d at 831 (sole inquiry under fair and substantial relation test is whether the legislature could reasonably conceive to be true the facts on which the challenged classification is based) (citing *Vance v. Bradley*, 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979)). *See generally* Redish, *supra* note 3, at 771, 780–81.

**32.** A right of access to the courts has been founded in specific state constitutional provisions pertaining to access, *see, e.g., St. Vincent*

*Woods,* 591 F.2d at 1173 n. 16; *St. Vincent Hosp.,* 404 N.E.2d at 593–96; *Everett,* 359 So.2d at 1269; *Attorney General v. Johnson,* 385 A.2d at 71–72; *Paro,* 369 N.E.2d at 989–90; *Linder,* 629 P.2d at 1190–91; *Prendergast,* 256 N.W.2d at 663–64; *Comiskey,* 390 N.Y.S.2d at 130; *Strykowski,* 261 N.W.2d at 444. Access to the courts is not an independent right; it enjoys special protection only when the right to be asserted through such access is entitled to special protection, and no alternative forum exists to enforce that right. *Woods,* 591 F.2d at 1173 n. 16; *see Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). In cases such as this which involve rights not accorded special constitutional protection, *see supra* Part D, access may be hindered if there is a rational basis for the restraint imposed. *Woods,* 591 F.2d at 1173–74 n. 16 (citing *Ortwein v. Schwab,* 410 U.S. 656, 658–60, 93 S.Ct. 1172, 1173–74, 35 L.Ed.2d 572, 575–76 (1973)); *Everett,* 359 So.2d at 1268; *Linder,* 629 P.2d at 1190; *Comiskey,* 390 N.Y.S.2d at 129. Thus, the courts upholding their panel review statutes have, either expressly or impliedly, found a rational basis for the al-

leged delays and/or expense. *See, e.g., Seoane v. Ortho Pharmaceuticals,* 660 F.2d 146, 151 (5th Cir.1981); *Woods,* 591 F.2d at 1174 n. 16; *Everett,* 359 So.2d at 1269; *Attorney General v. Johnson,* 385 A.2d at 71; *Paro,* 369 N.E.2d at 990; *Linder,* 629 P.2d at 1191; *Comiskey,* 390 N.Y.S.2d at 129–30.

■ Consistency with the due process and equal protection analysis undertaken herein requires us now to reaffirm that a rational basis for the AS 09.55.536 panel review requirement exists.[33] We therefore hold that AS 09.55.536 does not unconstitutionally deprive medical malpractice plaintiffs of their right of access to the courts.

CONCLUSION.

Petitioner Keyes has failed to overcome the presumption that the legislature acted within constitutional bounds in enacting AS 09.55.536. *See State v. Rice,* 626 P.2d 104, 108 (Alaska 1981); *Kimoktoak v. State,* 584 P.2d 25, 31 (Alaska 1978). She has presented no factual support for her allegations that the expert panel review proce-

---

*Hosp.,* 404 N.E.2d at 594; *Everett,* 359 So.2d at 1268; *Linder,* 629 P.2d at 1190; *Prendergast,* 256 N.W.2d at 663, and has also been considered a matter of due process. *See, e.g., Attorney General v. Johnson,* 385 A.2d at 71–72; *Paro,* 369 N.E.2d at 990; *Jiron v. Mahlab,* 99 N.M. 425, 659 P.2d 311, 312 (1983); *Strykowski,* 261 N.W.2d at 444.

33. The courts which have invalidated panel review statutes as unconstitutional denials of access have done so for reasons inapplicable to this case. In *Jiron v. Mahlab,* 99 N.M. 425, 659 P.2d 311, 313 (1983), the court held that the requirement of appearing before a medical review commission prior to filing suit would not deprive plaintiffs of their constitutional right of access to the courts without undue delay in most circumstances, but would do so when the review requirement "causes undue delay prejudicing a plaintiff by the loss of witnesses or parties." Given that Keyes has not alleged any loss of witnesses or parties by operation of AS 09.55.536, *Jiron* does not intimate that she was unconstitutionally deprived of her right of access. *See Otero,* 697 P.2d at 501 (similar application of *Jiron*). Similarly, in *State ex rel. Cardinal Glennon Memorial Hosp. v. Gaertner,* 583 S.W.2d 107 (Mo.1979) (en banc), the Missouri Supreme Court held a medical review panel requirement invalid based on its view that the

delay caused by the requirement necessarily destroyed the remedies which depended on obtaining personal service on the defendants. *Id.* at 110 (following *People ex rel. Christiansen v. Connell,* 2 Ill.2d 332, 118 N.E.2d 262 (1954)). The court drew a distinction between the panel review requirement under scrutiny, which required panel review prior to commencement of court proceedings, and an analogous statute upheld against a denial of access challenge, which provided for review before trial but after filing of the court action. *Id.* Because Alaska's panel review requirement is distinguishable on the same ground, *Gaertner* furnishes no basis for sustaining a denial of access challenge in this case. In *Aldana v. Holub,* 381 So.2d 231, 238 (Fla.1980), the Florida Supreme Court held that the malpractice statute violated due process because application of its rigid jurisdictional periods had proven arbitrary and capricious in operation. The court noted that allowing extensions of the periods would be constitutionally impermissible because they would effectively deprive a claimant of access to the courts, in that the panel procedure could inflate up to sixteen months or more. *Id.* By contrast here, as previously noted, AS 09.55.536 allows the court only to extend the period for a panel report by an additional thirty days; the brevity of this delay in comparison with the Florida provision renders *Aldana* inapposite.

dure bears no reasonable or substantial relation to the legislature's goal to encourage settlement and reduce litigation of malpractice claims (and thereby to reduce insurance premiums and ensure the availability of medical care services at reasonable rates). Thus, the asserted deprivation of rights of due process, equal protection, and access to the courts must fail. The claimed violations of a right to a jury trial and of separation of powers principles are ill founded in light of the fact that the parties proceed to a full adjudication of their rights following issuance of the panel's opinion, which is not the sole basis for the entry of judgment but is merely one source of expert evidence available for the jury's consideration. We find no constitutional infirmity in AS 09.55.536.

AFFIRMED.

BURKE, J., dissents.

MOORE, J., not participating.

BURKE, Justice, dissenting.

I respectfully dissent. In my judgment, that portion of AS 09.55.536 permitting the introduction into evidence of the expert panel's report violates article I, section 16[1] of the Alaska Constitution, which guarantees a civil litigant such as Keyes the right of trial by jury.

The majority reasons that Keyes' right to trial by jury is not unduly burdened since determinations of ultimate fact remain for the jury. The fact that court-sponsored evidence is now, by law, injected into virtually every medical malpractice case tried in this state is not, the majority concludes, a matter of constitutional consequence. I cannot agree. What the majority fails to recognize about the jury trial guarantee is that it is as much the right of an individual to *keep the court out* of the fact-finding process as it is to *bring jurors into* it. *See* Saltzburg, *The Unnecessarily Expanding Role of the American Trial Judge*, 64 Va. L.Rev. 1 (1978).

AS 09.55.536(a) provides that, in an action against a health care provider, "the court *shall* appoint ... a three-person expert advisory panel," unless the court decides that such appointment "is not necessary for a decision in the case." Thus, in sharp contrast to Civil Rule 53 and Evidence Rule 706, which *allow* the appointment of masters or expert witnesses when the court deems it appropriate, AS 09.55.536 *mandates* appointment of an advisory panel in all but a handful of medical malpractice cases. In other words, court-secured evidence, under AS 09.55.536, becomes the rule, rather than the exception.

I believe that there is a significant danger that the jury will associate the opinion of the court appointed panel with the opinion of the court itself and will, accordingly, afford the panel's opinion undue weight, simply because the panel will be presented to the jury as "impartial." This, of course, would be a serious mistake. As one commentator has noted:

> It seems obvious that in this area *to label a doctor as impartial does not for the moment mean that he is right.* Thus where honest and qualified experts disagree, either the plaintiff's or the defendant's doctor may be right and the "impartial" expert wrong.

Levy, *Impartial Medical Testimony—Revisited*, 34 Temple L.Q. 416, 420 (1961) (footnotes omitted; emphasis in original). The danger presented by the jury's consideration of such evidence is particularly acute in the area of expert medical opinion, where reasonable experts can and do disagree, and where there are a significant number of competing schools of thought in any given field.

It is true that, under AS 09.55.536, the jury is to be "instructed in general terms that the report shall be considered and evaluated in the same manner as any other expert testimony." AS 09.55.536(e). However, given the grave danger that the jury

1. Alaska Const. art. I, § 16 provides:
 In civil cases where the amount in controversy exceeds two hundred fifty dollars, the right of trial by a jury of twelve is preserved to the same extent as it existed at common law. The legislature may make provision for a verdict by not less than three-fourths of the jury and, in courts not of record, may provide for a jury of not less than six or more than twelve.

will accord the panel's decision undue weight under the circumstances, I am not persuaded that the curative instruction in the statute renders it constitutionally acceptable. *Neither the panel nor its report may be cross-examined* by the party against whom the report is offered. All that the party may do is question members of the panel, individually. The notion that this is equivalent to cross-examination of an ordinary expert witness is pure nonsense, and anyone who believes otherwise has spent entirely too little time in the trial arena. Absent the tempering influence of such cross-examination, it is difficult to imagine how the jury can evaluate the panel's report "in the same manner as ... other expert testimony," and my belief is that it will not in most cases.

Originally, statutes such as AS 09.55.536 were designed to address the so-called "battle of the experts;" it was perceived that juries, being unschooled in medical science, were confounded by the conflicting views of the parties' paid experts and were, hence, unable to reach a just result. *See* Saltzburg, *supra* p. 2, at 76–77. *See generally,* 2 J. Wigmore, A Treatise on the Anglo–American System of Evidence in Trials at Common Law, § 563 (3d ed. 1940); Hand, *Historical and Practical Considerations Regarding Expert Testimony,* 15 Harv.L.Rev. 40, 51–54 (1901); Myers, *"The Battle of the Experts:" A New Approach to an Old Problem in Medical Testimony,* 44 Neb.L.Rev. 539, 541–61 (1965). The answer to this problem, according to some, was to require expert juries or to abolish the right to jury trial in complex cases. Most legal scholars, however, recognized that both of these solutions would almost certainly be held unconstitutional. *See, e.g.,* 2 J. Wigmore, *supra,* § 563 at 647–48; Hand, *supra,* at 56–57. Some of these scholars concluded that a similar effect could be achieved by the use of expert witnesses chosen and paid for by the court. Professor Wigmore described the utility of this proposed solution as follows:

> Modest as it seems, this expedient would remove most of the present abuses. As soon as a clash of opinion appeared between the partisan experts, paid by the parties, *the jury would turn for its real guidance to the impartial one selected and summoned by the judge, and his conclusions would have an almost decisive weight with the jury.*

2 J. Wigmore, *supra,* § 563, at 648 (emphasis added). Similarly, Judge Learned Hand, as early as 1901, noted that "much would [be] gained" by such an approach. He reasoned:

> One has only to notice the scrupulous impartiality as to giving any opinion on the facts that our American judges observe, and the immense power of the English bench—which freely expresses an opinion on the facts—in influencing verdicts, to realize *how great is the effect upon the jury, confused by the arguments of the two contestants, of some really impartial expression of an opinion upon which they can rely.* Particularly would this be true when it came from one who did know, about something of which they did not know. *Then though they might refuse the "evidence," in fact, they would not do so,* except where passion and bias were the basis of their verdict, cases which the courts can usually control by granting new trials.

Hand, *supra,* at 57 (emphasis added).

With due respect for the views expressed by these venerable scholars, I believe that our duty under the Alaska Constitution is to protect against such eventualities, not to encourage them. *If juries are incapable of making rational decisions in medical malpractice cases based upon the evidence placed before them by the parties, then the flaw is in the jury system itself, and it is the Constitution, not the rules of civil procedure, which must be changed.* In the meantime, we are sworn to protect the constitutionally guaranteed right to trial by jury against any scheme designed to frustrate its utilization or undermine its purposes. *See Beacon Theatres v. Westover,* 359 U.S. 500, 501, 79 S.Ct. 948, 952, 3 L.Ed.2d 988, 992 (1959) ("Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurispru-

dence that any seeming curtailment of the right to jury trial should be scrutinized with the utmost care."); *accord Spillers v. State*, 84 Nev. 23, 436 P.2d 18, 22 (1968); *Born v. State*, 397 P.2d 924, 935 (Okla.App. 1964), *cert. denied*, 379 U.S. 1000, 85 S.Ct. 718, 13 L.Ed.2d 701 (1965).

In my view, a statute which injects influential, court-sponsored evidence into jury trials as a matter of course, where the only real purpose in doing so is to influence the jury's verdict one way or the other, intrudes upon the parties' basic right to be free from undue court interference in the jury trial process. Thus, I would hold that AS 09.55.536 unconstitutionally infringes upon the right to jury trial guaranteed by article I, section 16 of the Alaska Constitution.

To the extent that it is needed to bar introduction of the panel's report at trial, I would require the superior court to enter a protective order.