Richard ROETHLER, Petitioner,

v.

LUTHERAN HOSPITALS & HOMES SO-
CIETY OF AMERICA, INC., d/b/a
Fairbanks Memorial Hospital, Carol
Phillips, M.D., and Emergency Medi-
cine Associates, P.C., Respondents.

No. S-886.

Supreme Court of Alaska.

Nov. 15, 1985.

Joseph L. Paskvan, Rice, Hoppner,
Brown & Brunner, Fairbanks, for petition-
er.

James J. Delaney, Delaney, Wiles,
Hayes, Reitman & Brubaker, Inc., Anchor-
age, for respondent Lutheran Hospitals
and Homes Soc. of America, Inc. d/b/a
Fairbanks Memorial Hosp.

Charles R. Pengilly, Hughes, Thorsness,
Gantz, Powell & Brundin, Fairbanks, for
respondents Carol Phillips, M.D. and Emer-
gency Medicine Associates, P.C.

Before RABINOWITZ, C.J., and
BURKE, MATTHEWS and COMPTON, JJ.

COMPTON, Justice.

Petitioner Richard Roethler filed a medi-
cal malpractice case against Respondents.
An expert advisory panel was requested,
but through no fault of Petitioner, no panel
was appointed and no report was filed with-
in the term prescribed by law. He alterna-
tively moved for dismissal of the panel, or
for permission to commence discovery.
The trial court denied the motion. On his
petition, we granted review. Appellate
Rule 304(d). We reverse.

I. FACTUAL AND PROCEDURAL
BACKGROUND

According to Petitioner's complaint, the
facts are as follows. Vera Roethler ar-
rived at Fairbanks Memorial Hospital via
ambulance, wearing a neck brace and sup-
ported with a back board. Mrs. Roethler
was admitted through the emergency
room, complaining of pain to her mid-back
and pelvis. Approximately two hours after
her admission, Dr. Carol Phillips dis-
charged Mrs. Roethler. She was sent
home in a taxicab called by the hospital.
Mrs. Roethler later died at home, in her
husband's presence. The cause of death
was apparently a collapsed lung caused by
the jagged edge of a fractured rib. Sever-
al ribs and the pelvis were later determined
to have been fractured.

Mr. Roethler sued Dr. Phillips, Emergency Medicine Associates and Fairbanks Memorial Hospital (hereinafter Respondents) alleging medical malpractice. Respondents moved for appointment of an expert advisory panel pursuant to AS 09.55.536,[1] and requested that at least one member of the panel be an emergency room technician. Mr. Roethler then requested that the panel consist of one emergency room specialist, one orthopedist and one internist. He further requested that a series of specific questions be asked of the panel.

At the crux of this case are the time limits established by AS 09.55.536 within which the panel is to be appointed and issue its report. In the present case, the complaint was filed December 12, 1984. Answers were filed January 9, 1985, along with a request for appointment of an expert advisory panel pursuant to the statute. The twenty day period for appointment of the expert panel expired January 29, 1985. A hearing on the matter was scheduled for February 7, 1985, but was cancelled. On February 26, Mr. Roethler moved to strike the expert panel appointment or alternatively to lift the ban on discovery. His motion was denied March 5, 1985. He petitioned for review March 7, 1985, by which time no panel had been appointed.

## II. ARGUMENTS OF THE PARTIES

### A. *Petitioner.*

The expert advisory panel statute provides that a court may relax the discovery prohibition upon a showing of "good cause." AS 09.55.536(f) Mr. Roethler argues that good cause for relaxation of the discovery prohibition exists as a matter of law when more than eighty days [2] have passed since the filing of the answer, and movant has not been responsible for any significant delay. In support of this position he cites the fact that prior to 1978, the statute included the thirty day period for issuing the report but lacked any time limit for appointment of the panel in the first place. In 1978, the twenty day limit was added and the thirty day limit was left intact. AS 09.55.536, *amended by* § 23 ch. 177 SLA 1978. According to Mr. Roethler, this demonstrates a legislative intent to mandate prompt determination by the panel so the litigation can either be dismissed or proceed.

Mr. Roethler also contends that the absence of a provision to toll the statute of limitations while the panel makes its assessment supports a rule lifting the discovery ban after eighty days. Since a plaintiff cannot conduct discovery while awaiting the panel report, it cannot be determined if additional defendants exist. A long delay in the start of discovery could thus prevent a plaintiff from even being able to sue a culpable party.

Mr. Roethler further argues that passing time and fading memories work against a plaintiff who seeks to preserve evidence for eventual adjudication.

Finally, Mr. Roethler argues that delays in cases such as this burden the survivors of the deceased, who are effectively prohibited from discovering the cause and circumstances of death.

---

1. AS 09.55.536 provides in pertinent part:
   (a) In an action for damages due to personal injury or death based upon the provision of professional services by a health care provider ... the court shall appoint within 20 days after filing of answer to a summons and complaint a three-person expert advisory panel.... When the action is filed the court shall, by order, determine the professions or specialties to be represented on the expert advisory panel, giving the parties the opportunity to object or make suggestions.
   ....
   (c) Not more than 30 days after selection of the panel, it shall make a written report to the parties and to the court, ...

   ....
   (f) No discovery may be undertaken in a case until the report of the expert advisory panel is received. However, the court may relax this prohibition upon a showing of good cause by any party. If the panel has not completed its report within the 30-day period prescribed in (b) of this section, the court may, upon application, grant it an additional 30 days.

2. The 80-day figure is obtained by adding the 20-day limit for appointing the panel to the 30-day limit for issuing the report, plus the possible 30-day extension.

## B. *Respondents.*

Respondents contend that the legislation is intended to protect the medical profession by weeding out frivolous claims, encouraging settlements and thereby holding down the cost of malpractice insurance premiums. A per se rule allowing discovery to commence in any case where the report has not been issued within the eighty day limit deprives the medical profession of that protection whenever appointment of the panel is delayed, since the costs of discovery would be wasted if the panel's report did lead to a settlement.

Respondents also rely on the plain language of the statute, which prohibits discovery "until the report of the expert advisory panel is received." AS 09.55.536(f) They argue that since the statute makes no provision for early discovery in cases where the report is issued late, no relaxation of the prohibition against discovery is required.

Finally, respondents argue that the matter should be left to the trial court's discretion, and any delay by the panel should be one of many factors considered in exercising that discretion.[3]

## III. GOOD CAUSE TO LIFT THE DISCOVERY BAN IS DEMONSTRATED AS A MATTER OF LAW WHEN NO REPORT HAS BEEN ISSUED AFTER EIGHTY DAYS HAVE ELAPSED FROM THE FILING OF ANSWER, IF THE PARTY WISHING TO BEGIN DISCOVERY IS NOT RESPONSIBLE FOR THE DELAY.

■ We hold that the prohibition on discovery should be lifted at the end of eighty days, whether or not the expert advisory panel has issued a report, assuming that the party wishing to begin discovery is not responsible for any significant delay.

Respondents argue that the statute is intended to protect medical providers from the high costs of defending against malpractice claims. Because any costs devoted to discovery are wasted if the panel's report precipitates a settlement, respondents urge that the ban on discovery should continue until the report is received, whether it is late or not. Their reliance on that narrow purpose is misplaced, however. The statute is not meant to protect medical practitioners by precluding plaintiffs with legitimate claims from successfully bringing suit. The burdens which result from delaying the start of discovery fall disproportionately on plaintiffs, who must carry the burden of proof, yet who have no access to crucial information as long as discovery is prohibited. The problem of "fading memories" is more than a cliche. As time passes, persons with crucial information may forget, move, die or readjust their recollections to coincide with those of other participants.

■ The inclusion of time limits in the statute, especially the 1978 addition of the twenty day deadline for appointment of the panel, indicates that another purpose of the statute is to encourage prompt determination of claims. Some courts even have held statutes creating expert advisory panels unconstitutional in the face of due process challenges raised because of prejudicial delays in panel proceedings. For example, in *Mattos v. Thompson*, 491 Pa. 385, 421 A.2d 190 (1980), the court reasoned that time lags in processing claims resulted in oppressive delays and impermissibly infringed upon the claimant's right to trial by jury. In *Jiron v. Mahlab*, 99 N.M. 425, 659 P.2d 311 (1983), the court held that where a requirement of going before an expert medical panel caused undue delay, prejudicing a plaintiff by the loss of witnesses or parties, the plaintiff is unconstitutionally deprived of the right of access to the courts. Although plaintiffs here do not raise any constitutional issues, the potential due process problems accentuate the gravity of the difficulties created by delays.

To alleviate problems of loss of witnesses or parties due to delay, we will allow the

---

**3.** Both parties addressed in their briefs the issue of whether the time limits set forth in AS 09.55.-536 are mandatory or directory. Because we hold that good cause to lift the discovery ban is demonstrated as a matter of law when a report has not been issued after eighty days from the filing of an answer, we need not address this issue.

parties to proceed with discovery pending receipt of the panel's report. Thus, even though trial may be delayed by a late panel report, the harmful effects of delay are mitigated by permitting the discovery to proceed.

A related problem which may arise from the delay of discovery proceedings is the running of the statute of limitations. Prior to discovery, plaintiffs may not know the identity or role of all the potentially liable parties. Since AS 09.55.536 makes no provision for tolling the statute of limitations while discovery is prohibited, arguably plaintiffs could be deprived of the opportunity to sue culpable parties whose identity remains unknown until after the statute of limitations has run.

Respondents concede that in some cases early discovery would be appropriate. They would leave the determination to the trial court's discretion. A plaintiff would be required to show that the claim is not frivolous and the panel's report is not likely to advance settlement negotiations. In the case of a delayed report, respondents argue, a plaintiff would have to show prejudice from the delay in order to show good cause to lift the discovery ban. Consideration of the practical aspects of such a scheme, however, show it to be untenable.

With only a minimal amount of information available, movants would have a difficult time showing that the expert panel's report would not be likely to advance settlement negotiations, especially when the panel has not even been appointed. In many cases, even a late panel report would advance settlement negotiations, but one party's position in those negotiations would be handicapped by the delay. Just as a lawsuit may be weakened by fading memories and lost information, so might a party's bargaining position in settlement negotiations be impaired. Furthermore, continued delays might constrain plaintiffs to accept a low settlement in order to alleviate the financial problems of ongoing medical expenses.

Prejudice from delay would also be difficult to demonstrate to the trial court prior to the start of discovery. A party prohibited from conducting discovery has little or no information from the opposing party. The movant would thus have very little basis for either predicting exactly what information might be obtained or demonstrating the prejudicial impact of a delay in obtaining it. As a practical matter, the attempted showing often would be so speculative as to be pointless. If unsuccessful movants later find that they have been prejudiced because information has been lost to them, the harm has already occurred. Potential remedies for that harm would be far more difficult to devise and administer than a rule permitting discovery at the end of the statutory time limit.

We therefore hold that good cause for lifting the discovery ban exists as a matter of law when eighty days have passed since the date the panel was requested.

We adopt this per se rule despite two potential objections. First, we realize that often the delay may not be long. The panel's report may be issued only a few days late, and its contents may cause the parties to settle the case. In that case, any discovery undertaken between the eighty day deadline and the submission of the report would prove to have been a waste of time and money. On the other hand, *some* limit is required in order to deal with instances of more substantial delay, where parties do face a serious risk of loss of information, but would have a difficult time demonstrating precisely what prejudice they would suffer because of a lengthy delay. Since any other limit would be purely arbitrary, we choose to set the limit at the statutory eighty day deadline.

Second, we recognize that medical malpractice defendants will bear the burden of delays caused by logistical problems that arise out of Alaska's peculiar geography, which may hamper assembly of an appropriate panel. Continuing the ban, however, would force plaintiffs to bear the burden of such delays. As between two parties, neither of whom are to blame for these delays, the balance must shift in favor of plaintiffs, since they are disproportionately burdened by the discovery prohibition.

## IV. CONCLUSION

Discovery shall be allowed to begin after expiration of the eighty day statutory deadline, providing the party seeking discovery is not responsible for any significant delay. Any other limit devised by this court would be purely arbitrary. Use of the eighty day rule is consonant with the statutory scheme. It will provide a bright line by which parties and trial courts alike can set their expectations as to when discovery will begin. It will also eliminate the need for extended wrangling at the trial court level about the type of prejudice or length of delay that would justify lifting the ban on discovery. Protecting parties from the costs of conducting discovery is not a sufficient justification for maintaining the discovery prohibition beyond the eighty day limit for producing a panel report.

REVERSED.

MOORE, J., not participating.