Harold F. PARKER, Appellant,

v.

Dr. Kevin M. TOMERA, Alaska Urological Associates, and Jane Does, Appellees.

No. S–10780.

Supreme Court of Alaska.

April 23, 2004.

Harold F. Parker, pro se, Anchorage.

Scott Hendricks Leuning, Clapp, Peterson & Stowers, LLC, Anchorage, for Appellees.

Before: BRYNER, Chief Justice, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

Harold F. Parker sued Dr. Kevin M. Tomera, Alaska Urological Associates, and unnamed others for medical malpractice and for

failing to obtain his informed consent prior to conducting an invasive diagnostic procedure. He claims that the procedure caused him permanent sexual dysfunction. The defendants moved for summary judgment and supported their motion with expert testimony that Parker's alleged injuries could not have resulted from the diagnostic procedure they performed. The superior court granted the defendants' motion for summary judgment because Parker failed to provide rebuttal expert testimony proving the existence of contested material facts requiring trial. Parker appeals, claiming that expert testimony was not required to prove his medical malpractice claim, that the superior court erred by not appointing an expert advisory panel, and that the defendants' expert witness did not address his informed consent claim. He also contests the superior court's award of costs and attorney's fees to the defendants. Because Parker did not introduce expert testimony to support his medical malpractice case, we affirm the grant of summary judgment on this issue. But because the superior court did not separately address Parker's informed consent claim, we reverse summary judgment on this issue. We remand the issue of fees and costs in light of this decision.

## II. FACTS AND PROCEEDINGS

This suit arises from treatment that Harold F. Parker received from Dr. Kevin M. Tomera and Mary Carol Miller, R.N.[1] during a visit to Alaska Urological Associates (AUA) on June 30, 1999 for a routine prostate examination. During this exam, Parker told Dr. Tomera that he experienced a constant need to urinate and that he was unhappy with his urinary condition. He had voiced this complaint during a previous visit to AUA in 1998, when he was treated for bladder outlet obstructive symptoms and possible prostatitis.[2] Based upon the symptoms reported by Parker and his responses to a medical questionnaire, Dr. Tomera concluded that the cause of Parker's complaints could be Interstitial Cystitis, a chronic inflammatory condition of the bladder.[3] To confirm this diagnosis, Dr. Tomera ordered a test that required the insertion of a catheter through Parker's urethra into his bladder and the injection of a potassium-based solution to determine changes in Parker's sensations of pain and urgency. This procedure, sometimes known as a Parsons Test, was performed by Mary Carol Miller, R.N. A prostate specific antigen (PSA) test, which is conducted to detect prostate cancer, showed a PSA level of 1.6, which is within the normal range.[4] Parker claims that he was never informed of any risks associated with this procedure and that he did not sign any consent forms or waivers.

Parker alleges that his current problems began when Nurse Miller removed the catheter so quickly that it flew over her shoulder. According to Parker, he immediately complained to Miller of an intense burning sensation inside his penis and he fell ill the following day with fever, chills, weakness, and nausea. The next month, Parker visited another urologist, Dr. J. Wesley Turner of Alaska Southcentral Urology Specialists, to follow up on a different medical condition. During this visit, he again complained of problems with urinary frequency, and he told Dr. Turner that he was experiencing burning inside his urethra and pain during intercourse. Dr. Turner diagnosed possible urethritis. A PSA test conducted during this visit showed an elevated level of 6.1, which prompted Dr. Turner to send Parker a letter

1. Nurse Miller, who had been sued as "Jane Doe," was the individual who performed the procedure at issue in this dispute.

2. Prostatitis, a painful condition of the prostate gland, can be caused by bacterial infection or inflammation of the prostate gland. It can be a chronic condition and is associated with pain, fever, chills, urinary problems, and painful ejaculation. See http://mywebmd.com/hw/mens_conditions/hw73295 (March 5, 2004).

3. Interstitial Cystitis is characterized by pressure and pain above the pubic area along with increased frequency and urgency of urination. See http://www.ichelp.org/whatisic/ICFactSheet.html. (March 5, 2004.)

4. For a white man in his 50s or 60s a PSA level of less than 4 is considered to be within the normal range. See http://mywebmd.com/hw/health_guide_atoz/aa96698 (March 5, 2004). Parker was 59 at the time of his examination.

recommending follow-up evaluation.[5] In this letter, Dr. Turner indicated that possible reasons for an elevated PSA include prostate cancer, prostatitis, or an enlarged prostate gland. A PSA test conducted on August 16, 1999 showed a PSA level of 3.9. During a follow-up examination with Dr. Turner on August 23, 1999 Parker discussed the Parsons Test ordered by Dr. Tomera in June and indicated that he had experienced fever and chills within twenty-four hours of this procedure and that he did not recall obtaining any antibiotics from Dr. Tomera. Dr. Turner indicated that Parker's elevated PSA in July could have been caused by the insertion of the catheter or by prostatitis, and he recommended a course of antibiotic treatment followed by a repeat PSA test in six months. Between October 1999 and October 2001, Parker had additional routine visits with Dr. Turner. He complained of sexual dysfunction during several of these visits.

Parker filed a complaint against Dr. Tomera, Alaska Urological Associates, and several Jane Does on June 29, 2001, alleging that the catheterization was performed negligently and left him permanently sexually dysfunctional, and that the defendants failed to obtain his informed consent for the procedure. He sought compensatory damages of $1,500,000 plus prejudgment interest, punitive damages, and costs and fees for bodily injury, pain and suffering, mental anguish, and loss of capacity to enjoy his sex life.

The defendants moved for summary judgment on January 31, 2002 and supported their motion with an affidavit from a board certified urologist indicating that Tomera's decision to test for interstitial cystitis was reasonable given the symptoms Parker complained of, that Tomera's treatment met the standard of care for a general practice urologist, and that it is physiologically and neurologically impossible to render someone impotent as a result of the catheterization involved in the diagnostic examination performed on Parker. The defendants claimed that, since Parker bore the burden of proving his medical malpractice claim, his com-

plaint must be dismissed if he did not rebut the defendants' expert testimony with admissible expert testimony supporting his claim that Dr. Tomera's treatment fell below the applicable standard of care. The defendants' motion did not address the issue of informed consent. Parker's request for additional time to respond to this motion was granted. In his opposition to this motion, Parker claimed that summary judgment was inappropriate because expert testimony was not required to evaluate his claim and because the defendants' expert affidavit did not address the issue of informed consent. On April 17, 2002 the superior court entered an order providing that summary judgment would be granted in thirty days unless Parker provided expert testimony to support his malpractice claim. This order did not address Parker's informed consent claim.

On April 22, 2002 Parker moved for an additional thirty days in which to obtain counsel and an expert affidavit, and he asked the court to apply the doctrine of *res ipsa loquitur* to this case since he claimed that his impotence would not have occurred but for the negligence of Dr. Tomera and his staff. In May Parker moved for the appointment of an expert advisory panel pursuant to AS 09.55.536 because he was unable to obtain expert testimony to support his case. The defendants opposed an extension of time because the trial was scheduled to begin in August 2002, and they opposed the request for appointment of an expert advisory panel as untimely and impractical. Parker moved for a supplemental summons for Mary Carol Miller in June and again requested an extension of time to obtain an expert affidavit. He indicated that an attorney, Robert D. Stone, had agreed to help him obtain an expert affidavit from a board-certified urologist. In opposing this motion, defense counsel submitted an affidavit indicating that Stone had denied that he had been retained by Parker; the affidavit also noted that the scope of services Stone had discussed with Parker involved merely drafting a letter to an expert identified by Parker. There was no indica-

**5.** PSA levels above 4 require further testing to confirm the presence or absence of prostate cancer. *See* http://my-webmd.com/hw/health_guide_atoz/aa96686 (March 5, 2004).

tion that Stone agreed to help Parker identify an expert witness. In reply, Parker alleged that the defendants were attempting to intimidate Stone to prevent him from assisting Parker.

The superior court granted the defendants' motion for summary judgment on July 21, 2002 because Parker failed to provide expert rebuttal testimony. This order was entered more than two months after the court's May 17, 2002 deadline to submit expert rebuttal testimony. Final judgment was entered on September 10, 2002. The order indicated that no jury trial was warranted since Parker failed to submit expert testimony demonstrating a factual dispute. The order did not separately address the informed consent claim. Parker appeals.

## III. STANDARD OF REVIEW

■ We review a grant of summary judgment *de novo* and will affirm the decision to grant summary judgment if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law.[6] We draw all reasonable inferences in favor of the non-movant.[7] "Once the movant has satisfied [his] burden of establishing an absence of genuine issues of material fact and [his] right, on the basis of the undisputed facts, to judgment as a matter of law, the non-movant is required, in order to prevent summary judgment, to set forth specific facts showing that he could produce evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate that a material issue of fact exists."[8] We may affirm a grant of summary judgment on any basis appearing in the record.[9]

■ We review questions of law, including the interpretation of statutes and regulations, using our independent judgment.[10]

■ We review a superior court's award of attorney's fees and costs for abuse of discretion.[11]

## IV. DISCUSSION

### A. The Superior Court Properly Granted Summary Judgment on the Medical Malpractice Claim.

Parker argues that summary judgment was inappropriate and that he is entitled to a trial to litigate his claims. He claims that expert testimony was not necessary to prove his claim, that the trial court did not properly advise him of the need to obtain an expert witness, and that the defendants' motion did not address the negligence of Nurse Miller and AUA or the failure of Dr. Tomera to prescribe medication to prevent prostatitis. Parker also claims that he was prevented from obtaining an expert witness due to "institutionalized prejudice" against *pro se* litigants and that the superior court erred by not appointing an expert advisory panel to resolve this problem. For the reasons discussed below, we reject these arguments.

1. **Summary judgment was appropriate because Parker did not provide expert testimony to rebut defendants' summary judgment motion.**

■ Parker's medical malpractice claim is based upon injuries that allegedly resulted from the Parsons Test performed in Dr. Tomera's office by Nurse Miller. Parker claims that this procedure caused him permanent sexual dysfunction manifested by impotence and other sexual disabilities. In support of their motion for summary judgment, the defendants submitted an affidavit from an expert witness indicating that it is impossible to make someone impotent as a

6. *Therchik v. Grant Aviation*, 74 P.3d 191, 193 (Alaska 2003).

7. *Moore v. Allstate Ins. Co.*, 995 P.2d 231, 233 (Alaska 2000).

8. *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n. 32 (Alaska 1978) (quoting *Howarth v. First Nat'l Bank of Anchorage*, 540 P.2d 486, 489–90 (Alaska 1975), *aff'd on reh'g*, 551 P.2d 934 (Alaska 1976)).

9. *Martinez v. Ha*, 12 P.3d 1159, 1162 (Alaska 2000).

10. *Therchik*, 74 P.3d at 193.

11. *Wyatt v. Wyatt*, 65 P.3d 825, 828 (Alaska 2003).

result of catheterization. The superior court ordered Parker to provide expert testimony to support his medical malpractice claim or face dismissal of his suit on summary judgment. Parker did not submit expert testimony and summary judgment was granted.

Medical malpractice actions are governed by AS 09.55.540, which places the burden of proof on the plaintiff:

(a) In a malpractice action based on the negligence or wilful misconduct of a health care provider, the plaintiff must prove by a preponderance of the evidence

(1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing;

(2) that the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and

(3) that as a proximate cause of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not have otherwise been incurred.

(b) In malpractice actions there is no presumption of negligence on the part of the defendant.

In *Kendall v. State, Division of Corrections*,[12] we held that "[i]n medical malpractice actions ... the jury ordinarily may find a breach of professional duty only on the basis of expert testimony."[13] The primary exception to this rule is if the negligence claimed would be evident to lay people.[14] Thus Parker was required by law to support his claim with expert testimony unless the causation of his alleged injury was of a non-technical nature. The injury Parker alleges does not fall within this category.

The defendants' expert, Dr. Mark R. McCaughan, submitted an affidavit asserting that Dr. Tomera's initial impression of in-

terstitial cystitis was appropriate given the symptoms Parker complained of, that catheterization was an appropriate diagnostic tool to confirm this diagnosis, and that it is physiologically and neurologically impossible to render someone impotent through catheterization. While Dr. McCaughan acknowledged that catheterization is inherently uncomfortable and painful, he indicated that the procedure could not have caused Parker's alleged sexual dysfunction. If Parker's sexual dysfunction was not caused by this procedure then he did not have a viable medical malpractice claim against Dr. Tomera, Nurse Miller, or Alaska Urological Associates. The defendants' motion and accompanying affidavit demonstrated the absence of factual issues requiring trial. According to the rule we articulated in *Kendall*[15] and affirmed in *Kaiser v. Sakata*,[16] Parker bore the burden of providing rebuttal expert testimony to prove the existence of a factual dispute.[17]

Parker claims that summary judgment was premature because the superior court did not advise him of the need to obtain an expert witness or allow any discovery before granting summary judgment. There is no evidence that Parker was prevented from conducting discovery. Indeed, in support of his May 14, 2002 request for additional time to secure an expert witness, Parker informed the court that "[t]he discovery process began in January and continues to the present day." The defendants submitted their initial disclosures on October 1, 2002 and supplemented the disclosures six times by May 2002. The defendants likewise timely responded to Parker's discovery and production requests. Parker, however, never provided the defendants with initial disclosures. Parker's assertion that the superior court failed to warn him of the need to obtain an expert affidavit is similarly unfounded. The superior court directly advised Parker of the need to provide expert testimony to withstand summary judgment, and Parker's

---

**12.** 692 P.2d 953 (Alaska 1984).

**13.** *Id.* at 955 (quoting *Clary Ins. Agency v. Doyle*, 620 P.2d 194, 200 (Alaska 1980)).

**14.** *Id.*

**15.** *Id.*

**16.** 40 P.3d 800, 805 (Alaska 2002).

**17.** *See Martinez v. Ha*, 12 P.3d 1159, 1162–63 (Alaska 2000).

awareness of this requirement is evident in his repeated requests that the superior court delay action on the defendants' summary judgment motion to provide him additional time to obtain an affidavit from an expert.

Parker's own affidavit, in which he claims that his injury was caused by the negligence of Dr. Tomera and the nurse who performed the procedure, does not qualify as expert testimony.[18] This is true even though Parker's affidavit states that Dr. Turner told him that he would not have diagnosed interstitial cystitis or recommended the bladder instillation, because "opinion testimony and hearsay statements that would be inadmissible at trial are inadmissible in a motion for summary judgment."[19] Parker has no right to a jury trial if the superior court properly dismissed his claim on summary judgment.[20] Parker failed to provide expert rebuttal testimony and thus summary judgment in favor of all defendants was appropriate on this claim.

### 2. The superior court was not required to appoint an expert advisory panel.

▇ Parker argues that he was unable to obtain expert medical testimony because of "institutionalized prejudice" against *pro se* litigants and that the superior court erred by not appointing an expert advisory panel to address this problem.

▇ Alaska Statute 09.55.536(a) states that in a medical malpractice suit "the court shall appoint within 20 days after filing of answer to a summons and complaint a three-person expert advisory panel unless the court decides that an expert advisory opinion is not necessary for a decision in the case." Not only does this statute provide that panels will

be appointed within twenty days of a defendant's answer, which was August 27, 2001, but the plain language of the statute also accords discretion to a court to determine whether such a panel is necessary to resolve a claim. "Trial judges are not obliged to appoint advisory panels, but rather have discretion to determine whether a panel is necessary."[21] Therefore, the decision not to appoint an advisory panel will only be overturned if the trial court abused its discretion.

Parker claims that the superior court abused its discretion by failing to appoint a panel to redress what he characterizes as "institutionalized prejudice" against *pro se* litigants that makes it impossible for them to retain expert witnesses without the assistance of counsel. Parker claims that he was unable to secure counsel to help him obtain an expert affidavit despite having written more than thirty attorneys, and that appointment of an expert panel would "right a wrong."

We have previously rejected the argument that the legislature created expert advisory panels to protect *pro se* litigants. In *Kaiser* we noted that "no points of legislative intent listed by the legislature in enacting or amending AS 09.55.536 relate to protection of pro se litigants."[22] To the contrary, "[i]t is virtually beyond dispute that the purpose of the numerous panel review procedures (including Alaska's) enacted during the early and mid–1970's was to alleviate the effects of the malpractice insurance crisis."[23] While AS 09.55.536, which provides for appointment of expert advisory panels, "is not meant to protect medical practitioners by precluding plaintiffs with legitimate claims from successfully bringing suit," neither does it shift the

---

**18.** *See Ball v. Birch, Horton, Bittner and Cherot,* 58 P.3d 481, 489 (Alaska 2002) (citing *Zok v. Collins,* 18 P.3d 39, 42–43 (Alaska 2001)); *Willoya v. State, Dep't of Corrections,* 53 P.3d 1115, 1124 n. 35 (Alaska 2002).

**19.** *Broderick v. King's Way Assembly of God Church,* 808 P.2d 1211, 1215 (Alaska 1991).

**20.** Alaska R. Civ. P. 56(c); *Falke v. Council of City of Fairbanks,* 960 P.2d 589, 590 (Alaska 1998) ("A proper grant of summary judgment does not infringe jury trial rights.")

**21.** *Kaiser v. Sakata,* 40 P.3d 800, 805 (Alaska 2002).

**22.** *Id.* at 805 n. 15 (Alaska 2002) (citing ch. 26, § 1, SLA 1997; ch. 177, § 1, SLA 1978; ch. 46, § 8, SLA 1982).

**23.** *Keyes v. Humana Hosp. Alaska, Inc.,* 750 P.2d 343, 352 (Alaska 1988).

burden of proof from the plaintiff.[24] In *Priest v. Lindig*[25] we discussed the legislative history of AS 09.55.540, which establishes the burden of proof in medical malpractice cases, and noted that the legislature was unambiguous in its desire to control the cost of medical malpractice insurance by requiring that malpractice be proven and not presumed.[26] Parker's argument, that the superior court was required to appoint an expert advisory panel to help him prove the defendants' medical malpractice, directly contradicts this legislative intent. It is wholly inconsistent to place the burden of proof on the plaintiff on the one hand, but require appointment of an expert advisory panel to help him prove his claim—at state expense [27]—on the other.

The record contradicts Parker's argument that the superior court abused its discretion. There is strong evidence that it would have been difficult or impossible to appoint a panel of three board certified urologists due to conflicts of interest. An expert advisory panel must consist of three individuals who practice in the same specialty as a defendant.[28] The defendants alleged that there were only fourteen urologists practicing in Alaska at that time, including Dr. Tomera. According to the defendants, four of these urologists worked at Alaska Urological Associates, a defendant in this case. Five are members of Alaska Southcentral Urology Specialists and work with Dr. Turner, thus they could be called as witnesses in this case. One of the remaining four urologists, Dr. McCaughan, is an expert witness for the defendants, and another is represented by the law firm defending Dr. Tomera in this case. That would leave only two board certified urologists without conflicts who could serve on the expert advisory panel. Parker introduced no evidence to rebut these assertions. Under these circumstances it was impractical to appoint a panel.

Furthermore, Parker's request was untimely. He requested appointment of a panel on May 14, 2002, more than eight months after the defendants filed their answer and less than three months before the start of trial. The record indicates that Parker was aware of his right to request an expert panel early in the litigation. In his October 2001 motion for additional time to seek counsel, Parker indicated that two of his questions for counsel were whether to seek appointment of an advisory panel and whether to seek arbitration of his claims. He did not retain counsel, despite his repeated promises to do so, and he did not make a timely request for the appointment of a panel. In his February opposition to the defendants' motion for summary judgment, Parker wrote that the "case has not arrived at the point where the court pursuant to AS 09.55.536 could appoint an expert advisory panel." While it is unclear upon what basis Parker made that assertion, his delay in seeking appointment of a panel is inexcusable in light of his repeated failure to retain competent counsel to assist in his claim. Given that Parker's request was made only one week before the court's deadline for submission of expert rebuttal testimony and only three months before the scheduled trial date, the superior court did not abuse its discretion by declining to appoint a panel.

### B. The Superior Court Erred in Granting Summary Judgment on the Informed Consent Claim.

The superior court granted the defendants' motion for summary judgment and dismissed Parker's claims with prejudice. This motion, and the court's order, addressed only Parker's medical malpractice claim. On appeal, Parker claims that it was error to dismiss his informed consent claim on summary judgment because the defendants did not make a prima facie showing negating

**24.** *Roethler v. Lutheran Hosps. & Homes Society of America, Inc.,* 709 P.2d 487, 489 (Alaska 1985).

**25.** 583 P.2d 173 (Alaska 1978).

**26.** *Id.* at 175–76 & n. 7 (citing House Judiciary Committee Report on Committee Substitute for Senate Bill 142).

**27.** AS 09.55.536(g) provides that travel and per diem expenses and expert witness fees shall be paid by the court.

**28.** *See* AS 09.55.536(a); AS 09.55.540(a)(1); *Priest v. Lindig,* 583 P.2d 173 (Alaska 1978).

that claim. The defendants respond that, because Parker cannot support the informed consent claim without expert testimony, it was properly dismissed along with his malpractice claim. But Parker's informed consent claim was distinct from his medical malpractice claim. For this reason, summary judgment was inappropriate.

■■■■ Alaska Statute 09.55.556 states the elements of a cause of action regarding informed consent:

> (a) A healthcare provider is liable for failure to obtain the informed consent of a patient if the claimant establishes by a preponderance of the evidence that the provider has failed to inform the patient of the common risks and reasonable alternatives to the proposed treatment or procedure, and that but for that failure the claimant would not have consented to the proposed treatment or procedure.

"The informed consent doctrine is based on the principle that every human being of adult years and sound mind has a right to determine what shall be done to his or her own body." [29] This statute requires medical professionals to disclose the information that a reasonable patient would need to know in order to make an informed decision about the proposed treatment.[30]

Parker alleges that Dr. Tomera failed to inform him prior to the Parsons Test that it could cause harm or serious illness. To the extent that Parker's claim relies upon his allegation that this procedure caused his sexual dysfunction, the defendants are correct that it was properly dismissed on summary judgment because Parker failed to provide expert testimony to support his claim. However, Parker also alleges that he became ill for several days and developed prostatitis as a result of this procedure. There is at least some evidence indicating a potential causal relationship between Parker's elevated PSA level and the insertion of the catheter by Dr. Tomera's staff. Dr. McCaughan, the defendants' expert witness, agreed that the proce-

dure could have resulted in Parker's subsequent elevated PSA level, but he did not address whether it could cause fevers and chills or prostatitis. Because McCaughan's affidavit did not address whether these were potential side effects there was no expert testimony for Parker to rebut. If infection and prostatitis are common risks of catheterization, then Parker was entitled to full information in deciding whether to consent to this procedure.

■■■ "A defendant is not entitled to complete summary judgment in Alaska unless it demonstrates as to each claim against it that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." [31] "For a trial court to decide on summary judgment that a doctor has disclosed sufficient information to allow a reasonable patient to make an informed decision about treatment, the record must establish that the physician explained to the patient in lay terms the nature and severity of the risk and the likelihood of its occurrence." [32] Dr. Tomera has not identified anything in the record to demonstrate that he discussed any risks with Parker. Accordingly, we find that the trial court erred in granting summary judgment on this claim.

## C. Parker's Remaining Procedural Claims Are Without Merit.

■■■ Parker also argues that the superior court erred by not ruling on several motions submitted after the court entered its order requiring him to submit expert rebuttal testimony. These motions included a request for an extension of time to obtain an expert affidavit and to conduct discovery, a supplemental summons to replace Mary Carol Miller, RN, as Jane Doe, a motion to compel discovery and for sanctions against the defendants, and a request to apply the doctrine of *res ipsa loquitur* to the malpractice claim. For the following reasons, these arguments are without merit.

---

29. *Korman v. Mallin,* 858 P.2d 1145, 1149 (Alaska 1993) (quoting *Hondroulis v. Schuhmacher,* 553 So.2d 398, 411 (La.1989)).

30. *Id.*

31. *Ball v. Birch, Horton, Bittner and Cherot,* 58 P.3d 481, 485–86 (Alaska 2002).

32. *Korman,* 858 P.2d at 1150.

To succeed in his claims of error, Parker must prove both error and prejudice.[33] On April 17, 2002 the superior court entered an order requiring Parker to provide expert rebuttal testimony within thirty days in order to withstand summary judgment. While the superior court did not rule on Parker's motion for a thirty-day extension, it did not enter judgment until July 21, 2002, more than two months after its own deadline. Thus Parker received an extension even though the court did not formally rule on his request. Because the motion for summary judgment sought to dispose of Parker's malpractice claims against all defendants, it was reasonable to withhold ruling on the supplemental summons. For the same reason it was appropriate to delay ruling on Parker's discovery request. While there is no evidence that the defendants failed to comply with Parker's discovery requests, and thus no basis upon which to impose sanctions, this issue was rendered moot by disposition of Parker's claim on summary judgment. Finally, Alaska has legislatively nullified the doctrine of *res ipsa loquitur* in medical malpractice actions.[34] The superior court did not err by withholding action on these motions pending Parker's compliance with its order to provide rebuttal expert testimony.

### D. The Award of Fees and Costs Must Be Redetermined Following Procedures on Remand.

■ Parker's final argument is that the superior court erred by awarding attorney's fees and costs to the defendants. He claims that this award was inappropriate because the defendants failed to comply with Civil Rule 26, violated Civil Rule 37, and interfered with Parker's attorney-client relationship with attorney Stone. These arguments are baseless.

As noted, we review an award of fees and costs for abuse of discretion.[35] There is no basis to find that the trial court abused its discretion in awarding costs and fees to the defendants for the medical malpractice claim. While Parker claims that the defendants provided incomplete and evasive answers to his discovery requests, the record indicates that the defendants appropriately responded to his requests for disclosures and discovery. Parker did not have an opportunity to pursue additional requests because he failed to rebut the defendants' expert evidence and lost his medical malpractice case on summary judgment. The record also indicates no interference with an attorney-client relationship with attorney Stone. Stone agreed to draft a letter to an expert witness identified by Parker, but Parker never paid a retainer fee or otherwise engaged his services. Defense counsel communicated with Stone to determine if he would be making an entry of appearance on behalf of Parker, but there is no evidence to support Parker's claim of interference with an attorney-client relationship.

In light of our decision that summary judgment was inappropriate on the informed consent claim, however, attorney's fees must be redetermined by the superior court following resolution of the claim of informed consent.

## V. CONCLUSION

Because Parker failed to introduce rebuttal expert testimony necessary to withstand the defendants' motion for summary judgment, we AFFIRM the grant of summary judgment on the medical malpractice claim. Because the superior court did not separately address Parker's informed consent claim, we REVERSE the grant of summary judgment as to this claim. We REMAND the issue of attorney's fees and costs for re-determination following resolution of this case on remand.

MATTHEWS, Justice, not participating.

**33.** Alaska R. Civ. P. 61; *Hayes v. Bering Sea Reindeer Prods.*, 983 P.2d 1280, 1283 (Alaska 1999).

**34.** *D.P. v. Wrangell Gen. Hosp.*, 5 P.3d 225, 234 (Alaska 2000) (Carpeneti, J. dissenting) (citing *Priest v. Lindig*, 583 P.2d 173, 175–76 & n. 7 (Alaska 1978) (citations omitted)).

**35.** *Wyatt v. Wyatt*, 65 P.3d 825, 828 (Alaska 2003).