**David Shannon GALLANT, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. A02–0263CV(RRB).**

United States District Court, D. Alaska.

Oct. 5, 2005.

---

**19.** Clerk's Docket No. 17 at 11 (emphasis added).

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEISTLINE, District Judge.

### I. INTRODUCTION

Before the Court is Defendant United States of America ("United States") with a Motion for Summary Judgment on Plaintiff's claims of HIV/AIDS exposure, Counts I and II, of her Complaint.[1] Plaintiff David Shannon Gallant ("Gallant") opposes and argues that genuine issues of material fact remain on both Counts.[2]

Because the Court concludes that there are no genuine issues of material fact, the Defendant's Motion for Summary Judgment is hereby **GRANTED** as to Counts I and II.

### II. FACTS

Gallant's claims of HIV/AIDS exposure arise out of her admission and care at the Alaska Native Medical Center ("ANMC") in February of 2000. Prior to her admission for surgery, Gallant was treated for breast cancer. In 1998, she had a mastectomy of her right breast.[3] In early 1999, Gallant underwent chemotherapy, stem cell transplant, and radiotherapy at a Seattle hospital.[4] Staff at the Seattle hospital warned her that her immune system was compromised and that she would remain vulnerable to infection for approximately one year.[5] She was warned that she should not be exposed to groups of people nor return to work during that time.[6]

In February of 2000, Gallant came to the ANMC for an elective breast mastectomy of her left breast.[7] After her surgery on February 2, she was placed into a room shared with another patient.[8] The other patient had previously tested positive for HIV, but was at ANMC because of pain from kidney stones.[9]

When Gallant entered the hospital room, she was still recovering from the anesthesia and she was prescribed morphine.[10] Throughout the night and next day, she suffered from nausea and diarrhea, and she spent much time in the bathroom.[11] According to Gallant, at one point during the night, she went into the bathroom and saw blood on the toilet.[12] Upon question-

---

1. Clerk's Docket No. 32.

2. Clerk's Docket No. 34.

3. Clerk's Docket No. 34 at Aff. David Gallant ¶ 2.

4. *Id.* at ¶ 4.

5. *Id.* at ¶¶ 4–5.

6. *Id.* at ¶ 5.

7. *Id.* at ¶ 8.

8. *Id.* at ¶ 10.

9. Clerk's Docket No. 32 at Ex. F at 15–16, 26–28.

10. Clerk's Docket No. 34 at Aff. David Gallant ¶ 10.

11. *Id.*

12. *Id.* at ¶ 12.

ing, her roommate responded that it was her blood.[13] Either before or after this episode, Gallant's roommate also informed Gallant that she was infected with HIV/AIDS.[14]

Gallant was appalled that she would be placed in a hospital with a woman suffering from HIV.[15] This emotion was exacerbated by the fact that she had a scratch on the back of her leg from a cat.[16] Gallant demanded to be transferred to a new room.[17] Gallant had not been warned ahead of time that she would be sharing a room with a woman who was infected with HIV.[18] Since this time, Gallant has had repeated blood tests that never tested positive for HIV.[19]

Even though there are discrepancies concerning Gallant's version of the evening and the other patient's memory, the United States argues that should not prevent summary judgment. The United States argues that it is entitled to summary judgment because Gallant "has failed to identify or produce any medical expert testimony to support her claims or to dispute the opinions and evidence presented by Defendant's infectious disease expert, Dr. Steer." [20]

## III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[21] The moving party need not present evidence; it needs only point out the lack of any genuine dispute as to material fact.[22] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[23] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[24] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[25]

## IV. DISCUSSION

Plaintiff filed this action under the Federal Tort Claims Act, which provides that the United States shall be liable for damages for tort claims to the same extent that a private party would be liable to the claimant, "in accordance with the law of the place where the act or omission oc-

13. *Id.* The other patient denies that she left any blood on the toilet, or that Gallant questioned her about blood on the toilet. Clerk's Docket No. 32 at Ex. F at 62–63.

14. Clerk's Docket No. 34 at Aff. David Gallant ¶ 12; Clerk's Docket No. 32 at Ex. F at 27–30, 59–60.

15. Clerk's Docket No. 34 at Aff. David Gallant ¶ 14.

16. *Id.*

17. *Id.* at ¶¶ 14–15.

18. *Id.* at ¶ 15.

19. Clerk's Docket No. 32 at Ex. G at Request for Admission No. 1.

20. Clerk's Docket No. 32 at 6.

21. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

22. *Id.* at 323–25, 106 S.Ct. 2548.

23. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

24. *Id.* at 255, 106 S.Ct. 2505.

25. *Id.* at 248–49, 106 S.Ct. 2505.

curred."[26] Here, the alleged tortious conduct occurred in Alaska. Thus, the Court applies the law of Alaska regarding the elements of proof for a medical malpractice action.

### A. Count I

■ Gallant argues that the United States owed her a duty not to place her in a room with an HIV-infected patient, breached that duty, and thereby caused her physical and mental injuries.[27] In an Alaskan medical malpractice action based on the negligence of a health care provider, the plaintiff has the burden of proof to prove by preponderance of the evidence the following elements:

(1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing;

(2) that the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and

(3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.[28]

There is not a presumption of negligence.[29] "In medical malpractice actions ... the jury ordinarily may find a breach of professional duty only on the basis of expert testimony."[30] An exception to this rule is that "expert testimony is not needed in non-technical situations where negligence is evident to lay people."[31]

The United States argues that summary judgment should be granted because Gallant failed to offer expert testimony to prove her medical malpractice claim.[32] However, Gallant argues that expert testimony is not needed because "the negligence claimed is apparent and would be evident to lay person."[33] Gallant states that, "It does not take professional knowledge or skill to understand that a cancer patient with a compromised immune system, such as [Gallant], would suffer severe emotional distress and anguish as a result of being placed in a room with patient infected with the HIV virus."[34]

■ However, Gallant errs by only focusing on the damage caused by the alleged negligence and not ANMC's professional duty and whether it was breached. The issue is not whether it was obvious that Gallant would suffer emotional distress, but whether the health care providers possessed and exercised the degree of knowledge or skill ordinarily exercised under the circumstances. That is, whether ANMC was negligent because the placement of Gallant in a room with an HIV-positive woman fell below the standards of medical care. This question requires knowledge of Gallant's immune system, risks of HIV exposure to someone in Gallant's position, and the appropriate standards of medical care. This is not a situation where negligence could be evident to a lay person.[35]

---

26. 28 U.S.C. §§ 1364(b) and 2674.

27. Clerk's Docket No. 1 at ¶¶ 10–15.

28. AS 09.55.540(a).

29. AS 09.55.540(b).

30. *Clary Ins. Agency v. Doyle*, 620 P.2d 194, 200 (Alaska 1980).

31. *Kendall v. State of Alaska*, 692 P.2d 953, 955 (Alaska 1984).

32. Clerk's Docket No. 32 at 8.

33. Clerk's Docket No. 34 at 7.

34. *Id.*

35. The classic example where expert testimony is not needed concerns the surgeon who amputates the wrong leg. *Clary Ins. Agency v. Doyle*, 620 P.2d 194, 201 (Alaska 1980) (citing W. Prosser, Law of Torts § 32, at 165 (4th ed.1971)).

The United States submitted the report and declaration of Dr. Steer, an infectious disease specialist. Dr. Steer stated that ANMC did not breach its standard of care, that ANMC did not create a significant or unreasonable risk of HIV exposure to Gallant, and that Gallant did not become infected with HIV.[36] Gallant submitted no expert report and so created no issues of material fact. Thus, the United States is granted summary judgment as to Count 1 of Gallant's complaint.

## B. Count II

◼ Gallant argues that Defendant had a duty to warn her that she was being placed in a room with someone who tested positive for HIV and of the common risks or precautions that she should take, that Defendant failed to do this, and thereby exposed her to the AIDS virus and caused her injury. Gallant argues that this is, essentially, a breach of the Alaska Informed Consent Statute. The Alaska Informed Consent statute states:

> A health care provider is liable for failure to obtain the informed consent of a patient if the claimant establishes by a preponderance of the evidence that the provider has failed to inform the patient of the common risks and reasonable alternatives to the proposed treatment or procedure, and that but for that failure the claimant would not have consented to the proposed treatment or procedure.[37]

The assignment of a room and roommate does not qualify as a "treatment or procedure," requiring informed consent.

◼ When the Alaska Legislature uses a word or phrase without defining it, a court should assume "that the legislature intended the word or phrase to have its common, ordinary meaning."[38] A common definition of "treatment" is "the action or manner of treating a patient medically or surgically."[39] A common definition of "procedure" is "a particular course of action."[40] Thus, the statute was intended, and has been interpreted as such, to apply to the common risks for the actions of treating a patient medically or surgically. The Alaska Supreme Court found the statute to cover diagnostic catheterization[41] and breast reduction surgery.[42] Plaintiff cited no authority, and the Court is unaware of any authority, that the informed consent duty encompasses room and roommate assignment.[43] As the duty to obtain informed consent does not apply, it is not necessary for the Court to examine the scope of disclosure. Therefore, there are no issues of material fact, and the United States' Motion for Summary Judgment is granted as to Count II of Gallant's Complaint.

---

36. Clerk's Docket No. 32 at Ex. A at ¶ 5.

37. Alaska Stat. § 09.55.556(a).

38. *Wells v. State,* 102 P.3d 972, 975 (Alaska App. 2004).

39. Webster's Third New International Dictionary (1986).

40. *Id.*

41. *Parker v. Tomera,* 89 P.3d 761 (Alaska 2004).

42. *Korman v. Mallin,* 858 P.2d 1145 (Alaska 1993).

43. In fact, the Supreme Court of Tennessee held that a hospital's nonsegregation placement policy concerning HIV-positive patients was in accordance with current healthcare standards and that the applicable medical standard of care was not violated by failing to inform patients that their roommates were HIV-positive. *Bain v. Wells,* 936 S.W.2d 618 (Tenn.1997).

## V. CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment is **GRANTED** (Clerk's Docket No. 32).